| 37 | 285 |
| 74 | 540 |

## SMITH vs. SLOAN, impleaded.

PARTNERSHIP. (1) *In nontrading, one member not liable for bill or note in firm name given by other without proof of authority, necessity or usage.* (2) *Although, for firm debt.* (3) *Note not valid as agreement to postpone accruing of cause of action.*

1. One partner in a *nontrading* partnership cannot bind his copartner by a bill or note, drawn, accepted or indorsed by him in the firm name, even though it be for a debt of the firm, unless either he has express

authority therefor from his copartner, or the giving of such instruments is necessary to the carrying on of the partnership business, or is usual in similar partnerships; and the burden is upon the party suing on such note or bill to prove such authority, necessity or usage.

2. Thus, where A. and B., partners in the practice of the law, were indebted for rent of their law office, and A. gave a negotiable note in the firm name for the amount at ninety days, with interest, and, in an action thereon against A. and B., there was no proof that B. authorized the giving of such note, or that it was necessary in the course of their business, or usual in similar partnerships for one partner to give such notes: *Held*, that there was no error in ordering a nonsuit as to B.

3. The instrument in such a case is not only incompetent to bind B. as a promissory note, but it cannot be treated, in respect to him, as a valid agreement to postpone the time when the cause of action should accrue, or as affecting his rights in any manner. And were this otherwise, *it seems* that where the complaint is upon the note, as such, the mere statement therein of the condition for which the note was given, cannot be treated as a count for use and occupation, or one upon an account stated.

APPEAL from the Circuit Court for *Rock* County.

The action was commenced November 4, 1871, before the police justice of Janesville. The complaint is as follows:

" The plaintiff complains and says, that during the year 1865, the said *S. W. Smith* and T. Jackman were copartners doing business under the name and style of Jackman & *Smith ;* that some time in the year 1868, T. Jackman died; that on the 1st day of September, 1865, and for a long time previous to the 1st day of September, 1865, *I. C. Sloan* and L. F. Patten were copartners, doing business as attorneys at law in the city of Janesville, Wisconsin ; that during the years 1864 and 1865 the said *Sloan* & Patten were indebted to said Jackman & *Smith* for rent of an office in said city of Janesville, in the sum of $131.25, on the 1st day of September, 1865, and the said *Sloan* & Patten, in settlement of said rent account, executed and delivered to said Jackman & *Smith* their promissory note in writing for the sum of $131.25, due and payable at the Rock County National Bank, in ninety days from the 1st day

of September aforesaid, with interest ; that the said defendants have neglected and refused to pay said note or any part thereof. The said plaintiff therefore demands judgment against the said defendants for the aforesaid amount of $131.25, with the interest thereon from the 1st day of September, 1865, besides the costs of this action."

The defendant *Sloan* answered, 1. A general denial. 2. A denial of the execution of the note described in the complaint. 3. Payment. 4. A denial that the defendants were partners when the note was given. 5. The statute of limitations. The justice rendered judgment for the defendant *Sloan;* the plaintiff appealed, and (the necessary affidavit having been filed) the cause was tried *de novo* in the circuit court. It appeared by the evidence, that, from 1864 to October, 1865, the defendants were partners in the business of practicing law in Janesville, occupying an office rented of Jackman & *Smith ;* and that Patten executed the note in suit in the name of the firm. The plaintiff then offered to prove various facts and circumstances tending to show that the defendants were partners when the note was given ; that the firm of *Sloan* & Patten was, at that time, indebted to Jackman & *Smith* for rent of their law office, in a sum equal to that for which the note was given ; and that the note was given for such arrears of rent. It was conceded by the plaintiff that Patten gave the note without the knowledge of *Sloan;* and no attempt was made to prove that Patten had any authority to sign the firm name to the note, other than what is implied from the partnership relation. The testimony thus offered was rejected by the court, and, at the close of the plaintiff's testimony, the court ordered a nonsuit, and gave judgment for costs against the plaintiff in favor of the defendant *Sloan.* From that judgment the plaintiff appealed.

*Cassoday & Carpenter,* for appellant, conceded that, in a *non-trading* partnership, one partner cannot bind the firm by bill of exchange or promissory note, except in a transaction within the scope of the partnership, and a part of the business of the

firm, and on a debt for which the firm would be liable, and that the plaintiff must allege, and prove on the trial, these facts; and cited the authorities which are reviewed by the court. But, they argued, the broad difference between trading and nontrading partnerships does not arise from an arbitrary rule that, in the one case the partner can, and in the other he cannot bind the firm. The difference is one of *evidence* and *presumption* and not of power. The nature of the business is a perpetual advertisement to the public that the authority of each member to bind his partners is limited to the business of the firm. Hence, it is that in a trading partnership *prima facie*, each partner is liable, but the presumption may be rebutted. For the same reason, the nontrading partnership, not being presumed to be engaged in buying, selling, or exchanging property, its partners are not *prima facie* liable upon bill or note given by one member, and it becomes necessary to allege and prove that it was in fact given in a firm transaction and for a firm debt. When it is shown that the note was given strictly in the business of the firm, and for a debt for which the firm is liable, then the presumption of liability should arise, as in a trading partnership. The rule should operate the same as to each, within the scope of its business. In support of this position, they cited *Livingston v. Roosevelt*, 4 Johns., 251; *Tappan v. Bailey*, 4 Metcalf, 529, per SHAW, C. J.; *Freeman v. Carpenter*, 17 Wis., 126; *Garland v. Jacomb*, 6 Moak, 289, 291; *Walden v. Sherburne*, 15 Johns., 422; *Doty v. Bates*, 11 id., 544; *McGregor v. Cleveland*, 5 Wend., 475; Story on Part., §§ 101, 102, 102 a, 105, 107, 110, 111, 113, 126, 122 and note, 133; 1 Greenl. Ev., § 112 and note, p. 131; 2 Kent's Com., Lec. 43, pp. 45–48; margin pp. 42–44; Collyer on Part., § 384; Story on Agency (8th ed.), §§ 37, 39, 124, 125; Story on Part., §§ 1, 101, 126; 2 Kent's Com., Lec. 43 (11th ed.), p. 43; margin p. 41; 1 Greenl. Ev., § 112 and note, p. 131; 1 Parsons on Con. (4th ed.), pp. 174, 175, 177, 184; *Wheatcraft v. Hickman*, 99 E. C. L., 47, 90, 93, 99; *i. e.*, 9 C. B. R., 47, 90–93, 99; *Sage v.*

*Sherman*, 2 Coms., 418, 426; *Van Keuren v. Parmelee*, 2 id., 423, 525; *Griswold v. Haven*, 25 N. Y., 597; *Barnard v. L. & P. H. R. R. Co.*, 6 Mich., 277; *Hotchin v. Kent*, 8 id., 528; *Rogers v. Brightman*, 10 Wis., 64; *Davis v. Richardson*, 45 Miss., 499.

*Bennett & Sale*, for respondent.

LYON, J. Had the offered testimony been received, the facts of the case, taken most favorably for the plaintiff, would have been briefly these: *Sloan* & Patten, the defendants, were partners in the business of practicing law, and, as such partners, became indebted to Jackman and *Smith* for rent of their law office. During the continuance of their copartnership, Patten, without the knowledge of *Sloan*, and without any express authority from *Sloan*, gave a firm note for unpaid rent. The question is, whether *Sloan* is liable on such note.

The partnership of the defendants was not a trading or commercial one, in which one partner may bind the firm by bill or note drawn or given in the firm name, in all transactions within the apparent scope of the partnership business. The learned counsel for the plaintiff argues, with much ingenuity, that the only difference between trading or commercial partnerships and partnerships in occupation or employment is, that in the former one partner may bind the firm by bill or note in all cases where the same is drawn or given in respect to transactions within the apparent scope of the partnership business, while in the latter one partner can so bind the firm only in actual partnership transactions. Hence he claims that one partner in a nontrading partnership may bind his copartner by bill or note given in settlement of a debt owing by the firm, but concedes that the facts upon which the authority to do so depends, must be averred and proved by the plaintiff, in an action upon a bill or note thus given.

On the other hand, it is argued by *Mr. Sloan* that no such authority in one of the partners is implied in nontrading part-

nerships; and that, although the note in suit was given by Patten during the existence of their copartnership and for a firm debt, still he cannot be held liable upon it, unless it be proved that he gave Patten express authority to execute it, or that it was given in the usual course of the business of the firm.

If the position of the counsel for plaintiff is correct, the nonsuit was erroneously ordered, and the judgment should be reversed; but if that of *Mr. Sloan* is correct, the nonsuit was properly granted, and there should be an affirmance of the judgment, unless the nonsuit was wrong upon other grounds.

The precise question for determination is, Can a partner in a law firm bind his copartner by a note given by him in the name of, and for a debt owing by, the firm, unless he has express authority from such copartner to give the same, or unless it was given in the usual course of the partnership business?

In the opinion by Mr. Justice COLE in *Freeman v. Carpenter*, 17 Wis., 126 (which was an action against all of the partners on a note given by one of them in the firm name), some observations are found which seem to sustain the position of counsel for the plaintiff. But the case cannot properly be regarded as authority to that extent, because it was there held that borrowing money and giving notes therefor were within the legitimate limits of the partnership business, and hence that all of the partners were liable to a *bona fide* holder thereof, on a note given by one of them in the firm name, but for his individual debt. It became, therefore, quite unnecessary to decide what the result would have been, had it been held that borrowing money and giving notes were not within the scope of the partnership business, and had it appeared that the note was given for a firm debt. Hence, notwithstanding what was said in *Freeman v. Carpenter* (the point not having been adjudicated by this court in any other case), we must regard the question under consideration as an open one in this state, now to be determined upon principle and authority.

The leading cases on the subject in England and in this country have been carefully examined; and a brief review of some of them is warranted by the great importance of the question.

*Greenslade v. Dower and Coleman*, 7 B. & C., 635, decided by the court of King's Bench, in 1828, is one of the earliest cases on the subject. It was an action of assumpsit against the defendants as acceptors of several bills of exchange, payable at six and twelve months, drawn by one Willoughby and indorsed by him to the plaintiff. It appeared on the trial that the defendant Coleman purchased of Willoughby the lease of a farm, and also certain stock, crops, fixtures, etc., on the farm, the price to be paid in bills at three months. A written agreement to that effect was entered into by Willoughby and Coleman, and immediately thereafter the defendant Dower became a party to such agreement, with Coleman. Subsequently Dower, without the knowledge or consent of Coleman, accepted the bills in suit for himself and Coleman for a part of the price of the lease and property thus purchased of Willoughby. It was argued for the plaintiff, that the defendants were partners in carrying on the farm, and, the bills having been accepted for a debt due from the firm, the acceptance by one partner for the firm bound both partners.

It was held that this being a nontrading partnership, Dower had no authority to accept the bills for Coleman, although drawn for a firm debt, and that Coleman was not liable on such acceptance. HOLROYD, J., said: "I am of opinion that the nonsuit was right. Dower had no authority in law to accept these bills for the original purchase of the stock on the farm. The transaction was not a matter of trade, and did not warrant the acceptance without express authority." (p. 639.)

*Dickinson v. Valpy*, 10 B. & C., 128, decided in 1829 by the same court, was an action wherein the plaintiff, an indorser for value, sought to charge the defendant on a bill of exchange drawn and accepted by the Cornwall & Devonshire Mining Co.,

by order of its board of directors, in which company the defendant was alleged to be a partner. The purpose for which the bill was drawn and accepted does not distinctly appear; but the case seems to have been decided on the hypothesis that the proceeds of the bill were used in the business of the company.

It was held that, assuming the defendant to have been a partner in the company, it was incumbent on the plaintiff to prove that the directors had authority to bind the other members of the company by drawing and accepting bills of exchange; and that, the plaintiff not having produced the deed of copartnership, nor any evidence tending to prove that it was necessary for the purpose of carrying on the business of the company, or usual for other companies of a similar character, to draw or accept bills of exchange, there was no evidence of such authority to go to the jury. A rule for a nonsuit was made absolute. Lord TENTERDEN, C. J., said: "Assuming that the defendant was proved to be a partner, and not merely to have done certain acts in contemplation of becoming a partner, it was not shown that he, or the other members of that company, had given any authority to a certain part of that company to bind the rest by drawing or accepting bills of exchange. In order to show that, the plaintiff should have gone further, and proved some express authority for that purpose, or facts from which the law would imply such authority.    *    *    In the absence of such proof, I am of the opinion that the mere circumstance of a defendant's having become a shareholder in a mining company does not, in point of law, make him answerable for bills drawn or accepted by those who took upon themselves to manage the concern." BAILEY, J., said: "In order to establish his (the defendant's) liability, it ought to have been made out affirmatively on the part of the plaintiff, that this was a company in which the directors were authorized to bind the other members by drawing and accepting bills. Now upon that point the only question which could be submitted to the jury was, whether companies instituted for similar purposes

had constantly been in the habit of drawing and accepting bills; or whether it was absolutely necessary, for the purpose of carrying on the concern, that there should have been such a power. There was no evidence to warrant the judge in leaving those questions to the jury." LITTLEDALE, J., said that, even were it necessary to draw bills for the purpose of carrying on a mining concern, "it was incumbent on the plaintiff, in this case, to show, either, from the very nature of this company, that it was necessary, or, from the practice in other similar companies, that it was usual."

*Dickinson v. Valpy* was approved and followed by the court of Common Pleas in 1837, in *Bramah v. Roberts*, 3 Bing., N. C., 963 (32 E. C. L., 404).

The case of *Hedley v. Bainbridge*, 3 Ad. & E., N. S., 315 (43 E. C. L., 752), decided by the court of Queen's Bench in 1842, is more directly in point than either of those above mentioned. The action was upon a promissory note given by one of two attorneys in partnership, in the firm name and for a partnership liability. The declaration contained a count on the note, also a count for money lent, and one upon an account stated. The note was for money handed to the firm by a client, for investment. The sum due on the note was specified as the particulars of the plaintiff's demand. Lord DENMAN, C. J., said : "No doubt a debt was due from the firm ; but it does not follow that one partner had authority to give a promissory note for that debt. Partners in trade have authority, as regards third persons, to bind the firm by bills of exchange ; for it is in the usual course of mercantile transactions so to do, and this authority is by the custom and law of merchants, which is part of the general law of the land. But the same reason does not apply to other partnerships. There is no custom or usage that attorneys should be parties to negotiable instruments ; nor is it necessary for the purposes of their business." The plaintiff was nonsuited.

To the same effect is the *nisi prius* case of *Levy v. Pyne &*

*Richards,* tried before Baron ALDERSON in the same year, 1 Car. & Mar., 453 (41 E. C. L., 249), where it was held that, "if a bill of exchange or promissory note be drawn, accepted or indorsed, by one of two persons who are partners in a business which is not a trade (e. g. as attorneys), in the name of the firm, and the partner who did not write the names of the firm, by his plea, deny the drawing, acceptance or indorsement, respectively, the plaintiff must give evidence of the authority of the other partner to draw, accept or indorse in the name of the firm; but in the case of a commercial firm this is not necessary, as there is a general authority."

In *Hasleham v. Young,* 5 Ad. & E., N. S., 833 (48 E. C. L., 832), decided in 1844, the court of Queen's Bench applied the doctrine of the above cases to a guaranty given by one of a firm of attorneys in the name of the firm, and held, in an action on such guaranty against the firm, that the plaintiff must show that the same was given in pursuance of the ordinary practice of the parties.

*Ricketts v. Bennett,* 4 M., G. & S., 686 (56 E. C. L., 685), decided by the court of Common Pleas in 1847, is very similar to *Dickinson v. Valpy, supra.*

The last English case to which it is thought necessary to refer is, that of *Garland v. Jacomb,* Law Rep., 8 Exch., 218, and 6 Moak, 289, decided in 1873. That was an action against the accommodation acceptor of a bill of exchange, drawn by one of two attorneys in partnership, in the name of the firm, and indorsed by the same partner, in the firm name, to the plaintiff, but for the individual purposes of the partner who drew and indorsed the bill. The other partner knew nothing of the transaction. It was held in the Court of Exchequer, and afterwards, on appeal, in the Exchequer Chamber, that such indorsement was invalid, and that an accommodation acceptor was not estopped to deny its validity. The case fully reaffirms the doctrine of *Dickinson v. Valpy,* and *Hedley v. Bainbridge, supra.* See also Byles on Bills, 32 ; Collyer on

Partnership, § 402 ; Chitty on Bills, 54 ; Smith's Mercantile Law, 43.

There seems to be no conflict in the English cases. Judge Story, in his commentaries on the law of partnerships, lays down the same doctrine, § 102 a. The adjudications in this country, directly upon the subject, are not numerous. The doctrine of Story and the English courts is affirmed in *Ulery v. Ginrich*, 57 Ill., 531, and in *Hunt v. Chapin*, 6 Lans. (N. Y.), 139 ; and we do not think it is shaken by any of the cases cited in opposition thereto on behalf of the plaintiff. In most of those cases it seems to have been taken as granted that the partnerships to which they relate were of a commercial or trading character. This is true, we think, of all the New York cases thus cited. *Tappan v. Bailey*, 4 Met., 529, was an action on a promissory note given by the general agent of a joint stock lumbering company, in its name, for work done for the company. The court had before it the articles of association, which gave the directors (by whom the agent was employed) plenary powers ; and there was proof that the agent was authorized to employ laborers for the company, and had frequently given notes for labor, to the knowledge of the directors and without objection. Without deciding whether or not the company was a trading partnership, the court held, upon the evidence, that the members of the company (such company not being incorporated) were liable on the note in suit. This case is not in conflict with the English decisions. The only case cited which seems to hold a different doctrine, is that of *Crosthwait v. Ross*, 1 Humph. (Tenn.), 23. Crosthwait and one Hartwell were partners in the practice of medicine. The latter made a promissory note in the name of the firm, payable to Ross, who indorsed it for the accommodation of the makers. Hartwell then got the note discounted at a bank, converted the proceeds to his own use, and died. Ross took up the note at maturity, and brought his action upon it against Crosthwait. Ross did not know that the proceeds of the note were not to be

applied to partnership purposes. It was held that Crosthwait was not liable on the note; and the decision is in entire harmony with all of the authorities. But the court said, hypothetically, that had the note been given for anything for which a firm of physicians had use, he would have been liable on it. So Crosthwait escaped because the note was given for money instead of medicines, and because money (quoting the language of the court) "is not an article for which such a firm has use, directly." As a proposition of fact, we doubt whether the members of the medical profession will fully indorse the statement of the Tennessee court. We strongly suspect that a firm of practicing physicians has direct use for money, and that the fact would so appear, were members of such firms interrogated on the subject. It is sufficient to say of this case that, whatever there is in the opinion in conflict with the English cases, is purely *obiter dictum*.

We gather from all of the authorities that the distinction between a trading and a nontrading partnership, in respect to the power of a partner to bind his copartner by negotiable instruments, is not limited to a mere presumption of such authority in one case, and the absence of such presumption in the other, as the learned counsel for the plaintiff argued; but we think, and must so hold, that one partner in a nontrading partnership cannot bind his copartner by a bill or note drawn, accepted or indorsed by him in the name of the firm, not even for a debt which the firm owes, unless he have express authority therefor from his copartner, or unless the giving of such instruments is necessary to the carrying on of the firm business, or is usual in similar partnerships; and that the burden is upon the holder of the note who sues upon it, to prove such authority, necessity or usage.

It may be proper to remark in this connection, by way of illustration, that it is probably a usual practice for one partner in a firm of attorneys to draw bills in the firm name upon clients for services and disbursements; also checks upon banks

for partnership funds; and perhaps, also, to transfer notes belonging to the firm, by indorsement. In actions involving questions of the validity of such bills, checks or indorsements as against the other partners, the party asserting their validity would be bound to establish it in the manner above indicated.

In the present case, there was no attempt to prove that the defendant *Sloan* authorized his partner to give the note in suit, or that it was necessary in the course of their business, or usual in similar partnerships, for one partner to give promissory notes in the name of the firm. Hence, we conclude that *Mr. Sloan* is not liable on the note.

Were the action to be treated as one brought to recover the rent for which the note was given, it is plain that the statute of limitations is a complete defense to it; for the rent had accrued September 1, 1865, and the action was not commenced until November 4, 1871 — more than six years thereafter.

But it is said that although Mr. Patten had no authority to bind the firm by this note, still he had authority to bind it by an agreement that the rent should not become due until the expiration of ninety days from September 1, 1865; and that the note, although not binding upon *Mr. Sloan* as such, is binding upon him as an agreement to postpone the time when the cause of action should accrue. We are unable to concur in this proposition. It is not perceived how the note can be invalid as a note and binding as an agreement. We are of the opinion that, as to *Mr. Sloan*, the instrument is absolutely void, and that no right of his can be affected by it in any manner whatever. In *Hedley v. Bainbridge, supra*, the declaration contained a count on an account stated. That was the proper count upon which to recover the consideration of the note, if the instrument was binding on the firm as an agreement. Yet the plaintiff was nonsuited.

Moreover, we think that the complaint in this action is upon the note, and that alone. The mere stating therein the consideration of the note does not amount to a count for use and

occupation, or on an account stated. But, in the view we have taken of the case, this point is not very material. '

*By the Court.* — The judgment of nonsuit is affirmed.