THIRD NATIONAL BANK, Defendant in Error, *v.* ROBERT M. SNYDER, Plaintiff in Error.

### April 5, 1881.

1. Where, in a suit before a justice, the defendant's affidavit that he did not execute the note sued on is waived by stipulation, the defendant stands in the Circuit Court, on appeal, as if a plea of *non est factum* had been filed.

2. Under a plea of *non est factum* in an action on a note, the burden of showing that the note sued on was executed by the defendant is upon the plaintiff.

3. In the absence of evidence of a custom or usage among coffee brokers showing that a firm of such brokers is a trading partnership, it cannot be held that negotiable paper signed in the name of the firm by one member thereof, without the other's consent, and not used in the firm business, is good in the hands of an innocent holder for value.

4. There is nothing in the business of such a firm from which it can be implied, as a matter of law, that one partner has authority to bind the other by issuing negotiable paper in the name of the firm.

ERROR to the St. Louis Circuit Court, THAYER, J.

*Reversed and remanded.*

MARSHALL & BARCLAY, for the plaintiff in error : In order to confer power on a partner to bind his co-partner by a bill or note, "the partnership must be in a trade or concern to which the issuing or transfer of bills is necessary or usual, for otherwise a co-partner will not be liable for the act of his partner, unless he gave express authority."— Chitty on Bills (13th Am. ed.), *46 ; Story on Part.

(6th ed.), sects. 126, 127; *Zuel* v. *Bowen*, 78 Ill. 234; 1 Lindley on Part. 236–239; *Wilson* v. *Williams*, 14 Wend. 146; *Vienne* v. *Harris*, 14 La. An. 382. Where (as here) the usage and custom of the business in question are against the power of the firm to make notes, that power cannot be sustained in a particular case unless with the express authority of the several partners. — *Gray* v. *Ward*, 18 Ill. 32; *Lanier* v. *McCabe*, 2 Fla. 32; *Walcott* v. *Canfield*, 3 Conn. 194; *Selden* v. *Bank*, 3 Minn. 166; *Lawrence* v. *Dale*, 3 Johns. Ch. 23. Brokers are not persons engaged in trade. They are middle-men or negotiators, whose character and powers are of a special and limited nature, well defined by law. Persons dealing with them are presumed to do so with reference to their known character and limited powers. — *Whitehouse* v. *Moore*, 13 Abb. Pr. 142; *Bragg* v. *Meyer*, 1 McAll. 408; *Touro* v. *Cassin*, 1 Nott & M. 174. The power to issue bills or notes is not incident to the following concerns, even without evidence as to the customs of such firms: (*a*) Water-works company. — *Broughton* v. *Manchester Co.*, 3 Barn. & Ald. 1. (*b*) Washing company. — *Neale* v. *Turton*, 4 Bing. 149. (*c*) Firms engaged in milling business. — *Graves* v. *Kellenberger*, 51 Ind. 66; *Lanier* v. *McCabe*, 2 Fla. 32. (*d*) Firm engaged in mining. — *Dickson* v. *Valpy*, 10 Barn. & Cress. 128. (*e*) Firm engaged in tavern-keeping. — *Cocke* v. *Bank*, 3 Ala. 175. (*f*) Firm engaged as a publishing company. — *Pooley* v. *Whitmore*, 10 Heisk. 629. (*g*) Firm of planters. — *Prince* v. *Crawford*, 50 Miss. 344; *Benton* v. *Roberts*, 4 La. An. 216. (*h*) Firms of farmers. — *Hunt* v. *Chapin*, 6 Lans. 139; *Ulery* v. *Ginrich*, 57 Ill. 531. (*i*) Firm of sugar refiners. — *Livingston* v. *Roosevelt*, 4 Johns. *252. (*k*) Firm of physicians.— *Crosthwaite* v. *Ross*, 1 Humph. 23. (*l*) Firm for digging tunnels. — *Gray* v. *Ward*, 18 Ill. 32. (*m*) Gas company. — *Bramah* v. *Roberts*, 3 Bing. N. C. 963. (*n*) Firm of grocers. — *Bank* v. *Livingston*, 33 Barb. 467. (*o*) Salt

company. — *Bult* v. *Morell*, 12 Ad. &. E. 745. (*p*) Firm keeping a store and rope-walk. — *Wagnon* v. *Clay*, 1 A. K. Marsh. *257. (*q*) Salvage company. — *Thompson* v. *Salvage Co.*, 1 Exch. 694. (*r*) Firms of English attorneys.— *Hedley* v. *Bainbridge*, 3 Ad. & E. (N. s.) *315 ; *Hazelham* v. *Young*, 5 Ad. & E. (N. s.) *833 ; *Garland* v. *Jacomb*, L. R. 8 Exch. 216. (*s*) Firms of attorneys in America. — *Smith* v. *Sloan*, 37 Wis. 285 ; *Breckenridge* v. *Shrieve*, 4 Dana, 375. Where the execution of an instrument, purporting to be made by a firm, is denied under oath, the burden of proof is on the party offering the instrument to show that its execution was within the usual scope of the partnership, if it appears that the denying defendant did not execute it personally. — *Graves* v. *Keltenberger*, 51 Ind. 66 ; *Zuel* v. *Bowen*, 78 Ill. 234 ; *Smith* v. *Sloan*, 37 Wis. 285 ; *Dickson* v. *Valpy*, 10 Barn. & Cress. 128.

OVERALL, JUDSON & TUTT, for the defendant in error : In commercial or trading partnerships the law implies a power in one partner to bind the firm by negotiable paper in the hands of innocent holders, although given for a matter entirely outside the scope of the partnership business. — Dan. Neg. Inst., sect. 357 ; Edw. on Bills, 100, 106 ; Pars. on Part. 199, note *a* ; *Walworth* v. *Henderson*, 9 La. An. 339 ; *Monroe* v. *Cooper*, 5 Pick. 412 ; *Chagounes* v. *Edwards*, 3 Pick. 5 ; *Livingston* v. *Rooseveldt*, 4 Johns. 25 ; *Mechanics' Bank* v. *Foster*, 19 Abb. Pr. 47. And the burden of proof is upon the partner not signing, to show, not only that the note was given for purposes outside of the scope of the partnership business and against partnership agreements, but also that the party taking the note had knowledge of such facts, in order to defeat a recovery in his hands. — Dan. Neg. Inst., sect. 369 ; *Monroe* v. *Cooper*, 5 Pick. 412 ; *Hart* v. *Potter*, 4 Duer, 458 ; *Bank* v. *Cameron*, 7 Barb. 143 ; 1 Pars. on Notes & Bills, 128 ; Edw. on Bills, 105, 106 ; *Musgrave* v. *Drake*, 5 Q. B. 185.

THOMPSON, J., delivered the opinion of the court.

Small and Snyder were partners in St. Louis, doing business as coffee brokers. As between themselves, neither partner was authorized to bind the other by executing commercial paper. Small, without the knowledge or consent of Snyder, executed, and signed the firm name to, the following promissory note, and procured it to be negotiated : —

" 237.60.                       ST. LOUIS, March 27, 1879:

" Sixty days after date, for value received, — promise to pay to the order of A. B. Cowan, agent, two hundred and thirty-seven $\frac{60}{100}$ dollars, at Third National Bank, St. Louis, with interest from maturity at the rate of ten per cent per annum.

" SMALL & SNYDER."

He appropriated the proceeds to his own personal use, and none of them went into the partnership funds. The note fell into the hands of the plaintiff corporation, which is admitted to be an innocent holder for value.

The suit was commenced before a justice of the peace, and the plaintiff there made a stipulation waiving the affidavit of the defendant Snyder, that he did not execute the instrument sued on, which affidavit is required by section 2929 of the Revised Statutes. The plaintiff contends that this stipulation was made only for the purposes of the trial before the justice, and that the case stood in the Circuit Court as though no affidavit denying the execution of the instrument had been made. But we cannot take this view, for it would operate to exclude from consideration the substantial defence made by the defendant Snyder, on a technical and doubtful point of practice. Although he might have filed an answer in the nature of a plea of *non est factum*, under section 3060 of the Revised Statutes, which authorizes amendments in the Circuit Court of statements of causes of action or defence in cases appealed from justices' courts, yet he was not bound to do so ; he was entitled to stand on the case as made before the justice, and have the

*same* cause tried in the Circuit Court, *de novo.* Rev. Stats., sect. 3052.

The case then stood in the Circuit Court as though a formal answer in the nature of a plea of *non est factum* had been filed; and this cast upon the plaintiff the burden of showing that the note sued on was executed by Snyder, or by his authority. *Smith* v. *Sloan,* 37 Wis. 285.; *Zuel* v. *Bowen,* 78 Ill. 234; *Davis* v. *Scarritt,* 17 Ill. 202. But waiving as immaterial any question as to the burden of proof, this stipulation entitled the defendant Snyder to make the defence which he did make. He assumed the burden of proof, and showed by several witnesses that, as matter of fact, the making of promissory notes is not necessary or customary to the business of merchandise brokers, who, like other persons, frequently have need of money to carry on their business. The plaintiff offered no countervailing evidence, but relies on the principle that the power of issuing negotiable paper being incident to the business of *trading* partnerships, such paper is good in the hands of *bona fide* holders, although made by one partner for his own private purposes, and not for any partnership purpose, the holder having no knowledge of such fact. This is a very well understood rule of commercial law; and its correctness, when applied to trading partnerships whose business requires capital, or credit in the place of capital, or those whose custom it is to emit negotiable paper, is not open to question. But is a firm of mere brokers, a trading partnership within the meaning of this rule? What is a broker? He is a mere negotiator — a person who negotiates contracts for others relative to property, with the custody of which he has no concern. Bouv. L. Dic., tit. "Broker;" Paley on Ag. 13. "A factor," says Chancellor Kent, "is distinguished from a broker by being intrusted by others with the possession and disposal and apparent ownership of the property, and he is generally the correspondent of a foreign house. A broker is employed merely in the nego-

tiation of mercantile contracts. He is not intrusted with the possession of goods, and does not act in his own name." 2 Kent's Comm. 622, note *b.* So completely is he regarded in law as a mere go-between, that he is treated for some purposes as the agent of both parties to the contract which he has negotiated — the seller and the buyer. Bouv. L. Dic., tit. "Broker," 2. It seems obvious, therefore, that there is nothing in the business of a firm of merchandise brokers from which it can be *implied*, as a matter of law, that one partner has authority to bind the other by issuing negotiable paper. If there is anything in the business, or in the custom or usage of a particular class of brokers, doing business at a particular time or place, from which such a power is to be inferred, that is a matter of which the courts cannot take notice until it is proved as a fact. In this case nothing of the kind was proved, but the contrary was established by uncontroverted proof.

We might rest here; but the industry of the counsel for the plaintiff in error has furnished us with citations to a long line of rulings of the courts on this question, as it has arisen with reference to other partnerships. We have had the curiosity to examine these and other like cases; and from them it appears that the courts have held that the managing partners or agents of many partnership firms have no implied power to issue negotiable paper so as to bind, even in favor of *bona fide* holders without notice, the non-consenting partners, where the money was not applied to a partnership purpose, and there was no ratification. This has been held in the case of partnerships engaged in the following kinds of business: In mining (*Dickinson* v. *Valpy*, 10 Barn. & Cress. 128, leading case; *Ricketts* v. *Bennett*, 4 C. B. 686; *Bult* v. *Morrell*, 12 Ad. & E. 745); in milling (*Graves* v. *Kellenberger*, 51 Ind. 66; *Lanier* v. *McCabe*, 2 Fla. 32); in establishing and carrying on water-works (*Broughton* v. *Water-Works*, 3 Barn. & Ald. 1); or gas-works (*Bramah* v. *Roberts*, 3 Bing. N. C. 963); in publishing (*Pooley*

v. *Whitmore*, 10 Heisk. 629 ) ; in planting (*Prince* v. *Craw-ford*, 50 Miss. 344 ; *Denton* v. *Roberts*, 4 La. An. 216 ) ; or farming ( *Greenslade* v. *Dower*, 7 Barn. & Cress. 635 ; *Ulery* v. *Ginrich*, 57 Ill. 531 ) ; in sugar refining (*Living-ston* v. *Roosevelt*, 4 Johns. 251 ) ; in keeping a tavern ( *Cocke* v. *Bank*, 3 Ala. 175 ) ; in owning a ship ( *Williams* v. *Thomas*, 6 Esp. 18 ) ; in digging tunnels ( *Gray* v. *Ward*, 18 Ill. 32 ) ; in carrying on a laundry (*Neall* v. *Burton*, 4 Bing. 149 ) ; in practising law (*Hedley* v. *Bainbridge*, 3 Q. B. 316 ; *Garland* v. *Jacomb,* L. R. 8 Exch. 216 ; *Levy* v. *Pyne*, 1 Car. & Marsh. 453 ; *Smith* v. *Sloan*, 37 Wis. 285 ; *Breckenridge* v. *Shrieve*, 4 Dana, 375 ; and see *Hazelham* v. *Young*, 5 Q. B. 833 ) ; in practising medicine or surgery ( *Crosthwaite* v. *Ross*, 1 Humph. 23 ; *Lewis* v. *Reilly*, 1 Q. B. 349 ) ; in keeping a store and rope-walk ( *Wagnon* v. *Clay*, 1 A. K. Marsh. *257). Nearly all of these cases turn on the distinction between trading and non-trading partnerships. None of them affords a direct authority for the question before us ; but they afford strong analogies. If the members or managers of partnerships engaged in mining, manufacturing, and otherwise producing, where large capital and extended credit is required, have no implied authority to bind the firm by issuing negotiable paper, it is difficult to see how this authority can be implied in the case of mere negotiators, who may well carry on their business without capital.

We need not pursue the subject further. It is obvious that however much we may be inclined, on grounds of public policy, to uphold the immunities of commercial paper in the hands of innocent purchasers, we cannot sustain the rulings of the Circuit Court in this case without violating well-settled principles. Nor could we come to a different conclusion if we were at liberty to decide this question upon our own views of the justice of the case ; for then we should be compelled to say that it is a question between the innocent partner and the innocent banker ; that the one has

erred in going into business with a dishonest partner, and the other has been negligent in not inquiring into the authority of a partner in a non-trading concern to sign the firm name to a note before he purchased it. So far as we can see, they are equally innocent and equally at fault; and in such cases the policy of the law is to leave the parties where it finds them.

The learned judge erred in admitting the note in evidence against the objection of the defendant Snyder, and in refusing the declaration of law asked for by him.

The judgment is reversed and the cause remanded. Judge BAKEWELL concurs; Judge LEWIS did not sit.