NATIONAL STATE CAPITAL BANK *v.* NOYES & a.

Under the 46th rule of court, providing that the signatures and indorsements of all instruments declared on shall be considered as admitted at the first term, unless notice be given upon the docket that they are disputed within the first four days of that term, and an affidavit filed that such denial is not for the mere purpose of delay, if the execution of a promissory note, specially declared on to have been executed by the defendants as copartners, is not denied, both the genuineness and authority of its execution are taken as fully and conclusively admitted for all purposes, and no evidence to controvert either is received until the defendants are relieved from the operation of the rule.

In a commercial partnership, each partner is, in contemplation of law, the general and accredited agent of the partnership, and may bind all the other partners by his acts in all matters within the scope and objects of the partnership.

When one seeks to hold a non-commercial partnership upon a negotiable promissory note, he must show that the note was executed by the authority, or with the knowledge and consent, of all the partners, or that it was necessary in the course of their business, or usual in similar partnerships, for one partner to give promissory notes in the name of the firm.

A negotiable promissory note, received for value before maturity in the ordinary course of business without notice of infirmity, in the hands of an indorsee as collateral security, is freed from defences by the maker.

ASSUMPSIT, for money had and received. The plaintiffs claim to recover on a promissory note for $2,375, dated May 8, 1877, on four months, signed by the defendants by their firm name

of M. C. Noyes & Co., payable to the order of the *Waumbek Lumber Company*, and by them indorsed to the plaintiffs. Both defendants defend on the ground that the plaintiffs hold the note as collateral security, and Glines, one of the defendants, contests the right of the plaintiffs to recover upon other grounds stated below. Facts found by the court. At the trial the signatures and indorsements were admitted to the same extent that they would have been if the note had been specially declared on, and no notice or affidavit provided for in Rule 46 had been filed. If this admission shall be held to preclude Glines from making the defence stated below, leave was granted him to move to withdraw the same.

The plaintiffs' evidence tended to show that Noyes and Glines were partners under the firm name of M. C. Noyes & Co., and that the note was indorsed and delivered to them May 23, 1877, as collateral security for a note of that date for $1,400 discounted on that day, and now due.

Glines claimed that there were two firms of the name of M. C. Noyes & Co., one composed of Noyes and two persons of the name of Brown, and the other of Noyes and himself. The evidence tended to show that the credit was given by the plaintiffs to the firm composed of Noyes and Glines, and that they had no knowledge of any other. Glines offered to show that the note in suit was signed by Noyes without authority from him, and that he had no knowledge of the note until this suit was brought; that neither of the partners was authorized to sign the firm name in the transaction of any business; that the note in suit was an accommodation note made for the benefit of one Sinclair, for which the firm never received any consideration; and that the business of the firm composed of Noyes and the Browns was not closed until more than two years after the date of the note in suit. In reply to an inquiry by the court, it was admitted that he could not bring any of the above facts to the knowledge of the plaintiffs. The evidence was excluded, and he excepted. No evidence was offered that the plaintiffs were put upon inquiry in regard to the making of the note. The court found for the plaintiffs, and that they recover the amount due on the note for $1,400, and the expense of protest of the note in suit.

On motion by the defendants to discharge the case, or for a modification of the same, the following facts were found at the trial term. By various conveyances Noyes and Glines, in 1871, became the owners each of one undivided half of a mill, mill-privilege, and timber lot in Bethlehem. They carried on the mill, and operated on the lot. Each owned and furnished one half the teams, except the sleds and chains, which they owned in common. The help were paid out of the proceeds of lumber sold. They bought the stumpage on another lot from which they logged in the same manner, giving their notes for the stumpage. The name, M.

C. Noyes & Co., was used with the knowledge of Glines in correspondence with reference to the sale of the lumber. The lumber was billed in the firm name, and was often paid for in notes payable to the firm name. The notes so received were indorsed by the defendants' firm name, and discounted by the bank at Wells River, or Littleton, by the procurement of Noyes and with the knowledge of Glines. No notes signed by the firm as makers were ever discounted for the benefit of the firm. Their business was the getting off of timber and the manufacturing of it into lumber. They did not purchase manufactured lumber of others to sell.

The firm name of M. C. Noyes & Co. was signed to the note in suit by Noyes without authority from Glines. It was an accommodation note, given in renewal of another note. Neither Glines nor the firm received any benefit from the note, and Glines had no knowledge that the firm name was signed to it.

At the original trial there was no offer to show the foregoing facts, but there was no waiver of any defence to the note. The plaintiffs excepted to the hearing on the foregoing motion.

*Bingham & Mitchell* (*S. B. Page* with them), for the defendants.

1. It was incumbent on the plaintiffs to show not only that the defendants were partners, but to go further and show that their partnership was in a branch of business recognized as a commercial or trading business; or that Noyes had express authority; or that it was necessary and customary in their business to give notes of the character in suit. In the case of non-commercial or nontrading partnerships, no presumption of authority exists. Authority must be shown. Coll. Part. (6th ed.) 647, 648; Sto. Part., ss. 102, 126; Smith Merc. L. 43; Byl. Bills 32; Chit. Bills 54; *Greenslade* v. *Dower*, 7 B. & C. 635; *Dickinson* v. *Valpy*, 10 B. & C. 128; *Bramah* v. *Roberts*, 3 Bing. N. C. 963; *Hedley* v. *Bainbridge*, 3 A. & E. (N. S.) 315; *Levy* v. *Pyne*, 1 Car. & Mar. 453; *Hasleham* v. *Young*, 5 A. & E. (N. S.) 833; *Garland* v. *Jacomb*, L R. 8 Ex. 218; *Hunt* v. *Chapin*, 6 Lans. 139; *Ulery* v. *Ginrich*, 57 Ill. 531; *Skillman* v. *Lackman*, 23 Cal. 207; *Smith* v. *Sloan*, 37 Wis. 285; *Judge* v. *Braswell*, 13 Bush 69; *Pooley* v. *Whitmore*, 10 Heisk. 629.

2. Glines did not sign the note; he did not authorize any one to sign it; he did not know it was signed by any one until suit was commenced; and no one undertook to bind him. Upon what basis is his liability to be established? It is said he was Noyes's partner? So were the two Browns. What is there in the facts which in law would authorize the plaintiffs to call "Co." Glines instead of Brown? There is no evidence that either firm was a commercial partnership. *Non constat* but that the one to which the Browns belonged was a commercial partnership, while the other was a non-commercial or non-trading partnership.

3. The note was held by the plaintiffs as collateral security, and is open to the same defences that it would be if it had not been pledged. The plaintiffs contend that the doctrine of *Jenness v. Bean*, 10 N. H. 266, and *Williams* v. *Little*, 11 N. H. 66, was overruled in *Tucker* v. *Savings Bank*, 58 N. H. 83, and *Paige* v. *Chapman*, 58 N. H. 333. But the question was not raised in *Tucker* v. *Savings Bank;* and the conclusion in *Paige* v. *Chapman* is based upon the assumption that *Tucker* v. *Savings Bank* is an authority for the position that commercial paper held as collateral security is not excepted from the general rule.

*Chase & Streeter*, for the plaintiffs. 1. The plaintiffs took the note in suit before it was due, as collateral security for a loan of $1,400, relying upon the validity of the note. Besides the presumption to that effect from their holding the note (1 Dan. Neg. Ins., *s.* 812; Sto. Pr. Notes, *s.* 196; 2 Gr. Ev., *ss.* 171, 172), their evidence tended to show that they acquired the note *bona fide*, for value, in the usual course of business, before maturity, and without notice of any circumstance impeaching its validity; and no evidence was offered by the defendants to the contrary of either of these propositions. All the facts regarding the making of the note, offered by them, were properly excluded. · The doctrine of *Jenness* v. *Bean*, 10 N. H. 266, and *Williams* v. *Little*, 11 N. H. 66, was questioned in *Tucker* v. *Bank*, 58 N. H. 83, and was overruled in *Paige* v. *Chapman*, 58 N. H. 333.

2. The admission in regard to the signature of the note having been expressly made by the defendants is as binding as if it had arisen under the operation of the rule, and even more so, because the defendants' express consent thereto places them in a position where they could not ask·relief from the court with any hope of getting it. Therefore we contend that all the evidence offered by the defendant Glines as to the manner of signing the note in question, as to the authority of Noyes to do it, and as to there being two firms under the name of M. C. Noyes & Co., was incompetent, and properly rejected. It would have been incompetent even if the action had been brought by the original payees of the note instead of their innocent indorsees.

3. The evidence offered by the defendants tended to show that the note in question was an accommodation· note. The object of such a note is, that the party for whose accommodation it is made may negotiate it and raise money upon it. To make and issue such a note gives the holder full authority to raise money upon it. In the hands of innocent holders, a partnership cannot show that their name was used by some of the partners without authority. *Bank* v. *Thompson*, 42 N. H. 369; *Wagner* v. *Freschl*, 56 N. H. 495.

4. In assessing the plaintiffs' damages, the court below limited the amount to the amount due on the $1,400 note, together with protest fees, instead of the much larger amount due on the note in

suit. To this course the plaintiffs do not object, and the defendants certainly cannot. Its effect as to the defendants is the same as if they had proved the note to be an accommodation note, or to possess some infirmity as between them and the original payees, in fact the same as if their rejected evidence upon this point had been received and fully credited.

SMITH, J. The defendants are sued as copartners doing business under the firm name of M. C. Noyes & Co. The declaration is to be treated as if it alleged that the defendants as such partners made and signed the note in suit. An admission that the signature is genuine, is an admission that the name attached to the note is the firm name of the defendants, and placed there by one of the defendants with the authority of the other; and the admission is conclusive. *Williams* v. *Gilchrist*, 11 N. H. 535; *Nicholas* v. *Oliver*, 36 N. H. 218; *Bank* v. *Farmington*, 41 N. H. 32. The evidence offered was therefore inadmissible because in conflict with the admission, and because there was no evidence that the plaintiffs had any knowledge that the firm had received no consideration for the note. Every partner is, in contemplation of law, the general and accredited agent of the partnership, and may bind all the other partners by his acts in all matters within the scope and objects of the partnership. When the partnership is of a general commercial nature, one partner may buy and sell goods on account of the partnership; he may borrow money, contract and pay debts; may make, sign, and negotiate promissory notes and other negotiable paper in the name and on account of the partnership. Sto. Part., ss. 101, 125; Sto. Ag., ss. 124, 125.

It being within the scope of the partnership business to borrow money and negotiate promissory notes, it follows that one partner may misappropriate the money and still his firm be liable, unless the creditor knew or had reasonable ground to believe that the money was not borrowed for the use of the firm. *Wagner* v. *Freschl*, 56 N. H. 495; *Bank* v. *Rider*, 58 N. H. 512; *Hayward* v. *French*, 12 Gray 457; *Winship* v. *Bank*, 5 Pet. 529; *Bank* v. *Eldred*, 9 Wall. 544. Justice requires that each partner, having put it into the power of his copartners to do an act which must be injurious to himself or to another innocent party, should himself suffer the injury rather than the innocent party who has placed confidence in him. *Hern* v. *Nichols*, 1 Salk. 289; *Fitzherbert* v. *Mather*, 1 T. R. 12; *Nixon* v. *Brown*, 57 N. H. 34, 39; Sto. Ag., s. 127.

Upon the facts stated the plaintiffs are entitled to judgment. But the defendants ask for a new trial upon the ground that through misfortune they were prevented from making their defence, and that injustice will otherwise be done. Upon this motion a hearing has been had. The position is now taken, that the firm of M. C. Noyes & Co. was a non-trading or non-commercial firm, and that there was no power, express or implied, for either partner to

bind the firm by a promissory note. In a trading or commercial partnership, the extent of a partner's power to bind the firm is a question of law. By the commercial law each partner is presumed to be intrusted by his copartner with a general authority in all the partnership affairs. Any agreement among the partners restricting the authority of one partner as a general agent for the others is operative only between themselves. But in non-trading partnerships, such as farming and mining partnerships, and partnerships of practising lawyers and physicians, the power of a partner to bind his copartners is a question of fact. The partners are in no proper sense engaged in trade. In such a partnership a partner does not generally possess power to bind the firm, and consequently the extent of his powers is not fixed by the rules of law, but each case is left to be decided upon its particular facts. When, therefore, one seeks to hold a non-trading firm upon a negotiable instrument made by a single partner, he must prove either express authority, or that the giving of promissory notes is the custom and usage in the same business, or such facts as will warrant the conclusion that the partner had been invested by his copartners with the requisite authority. *Judge* v. *Braswell*, 13 Bush 69; *Smith* v. *Sloan*, 37 Wis. 285; *Pooley* v. *Whitmore*, 10 Heisk. 629; *Ricketts* v. *Bennett*, 4 Man. Gr. & S. 686; *Hasleham* v. *Young*, 5 A. & E. (N. S.) 833; *Hedley* v. *Bainbridge*, 3 A. & E. (N. S.) 315; *Levy* v. *Pyne*, 1 Car. & Mar. 453; *Bramah* v. *Roberts*, 1 Bing. N. C. 469; *Dickinson* v. *Valpy*, 10 B. & C. 128; *Greenslade* v. *Dower*, 7 B. & C. 635; *Dow* v. *Moore*, 47 N. H. 419; *Wagner* v. *Freschl*, 56 N. H. 495; *Bank* v. *Rider*, 58 N. H. 512; *Kimbro* v. *Bullitt*, 22 How. 256, 268.

In *Hedley* v. *Bainbridge*, *supra*, where one of two attorneys in partnership gave the note of the firm in payment of their debt, the court remarked,—"Partners in trade have authority, as regards third persons, to bind the firm by bills of exchange, for it is in the usual course of mercantile transactions so to do; and this authority is by the custom and law of merchants, which is part of the law of the land. But the same reason does not apply to other partnerships. There is no custom or usage that attorneys should be parties to negotiate instruments; nor is it necessary for the purposes of their business." And the burden is upon the holder of the note given by such a firm to prove authority, necessity, or usage. *Smith* v. *Sloan*, *supra*. The same is true of a partnership of practising physicians. *Crosthwait* v. *Ross*, 1 Humph. 23. So one of a firm keeping tavern cannot bind his copartners except strictly within the business of the firm. *Cocke* v. *Branch Bank*, 3 Ala. 175. But if the business is of such magnitude as to require large capital and credit, the rule will be of doubtful application, and it will depend very much upon the usage of the particular firm, and others similarly engaged. 1 Dan. Neg. Inst., *s.* 358.

There is no implied authority in a member of a joint stock com-

pany to accept bills of exchange on the part of the directors of the company. *Bramah* v. *Roberts*, 1 Bing. N. C. 469. Nor can one partner in a firm formed for the purpose of carrying on the business of mining bind the others by giving the note of the firm. *Judge* v. *Braswell*, 13 Bush 69. Nor has one of several persons jointly interested in a farm power to bind the others by drawing or accepting bills. *Kimbro* v. *Bullitt*, 22 How. 256, 267, 268. In the case of trading partnerships, the law implies authority in one partner to bind the firm by drawing and accepting bills, because the drawing and accepting are necessary for the purpose of carrying on such a partnership; but it does not follow that they are necessary for the purpose of carrying on the business of a non-trading company. *Dickinson* v. *Valpy*, 10 B. & C. 128.

Upon the facts reported we think the partnership of the defendants comes within the class denominated non-trading or non-commercial partnerships. Whether the notes given for the stumpage were individual or firm notes does not appear. If they were individual notes, then the note in suit, and the one of which it was a renewal, were the only notes issued in the firm name. They were made without the knowledge or assent of Glines, and for the accommodation of a stranger. Their issue was clearly a fraud upon Glines. It does not appear that the firm ever hired or had occasion to hire money, or buy property upon credit, unless the stumpage above mentioned was so bought. It dealt in a single commodity,—lumber manufactured from their own logs. With the single exception of the stumpage purchased, the firm was not engaged in buying merchandize, but confined its business to manufacturing and selling lumber. It is true their correspondence was carried on in the firm name, and notes payable to the firm by their firm name were received in payment of the manufactured lumber sold, and were discounted at the banks. But in this respect they do not differ from a partnership of attorneys, or physicians, or miners, or farmers, who draw bills in the firm name upon clients, patients, and customers for services and disbursements, and checks upon banks for partnership funds, and transfer notes belonging to the firm by indorsement. In an action involving the validity of such a bill, check, or indorsement, as against other partners, the party asserting their validity would be bound to establish it by proof. *Smith* v. *Sloan, supra,* 285.

Our conclusion is, that the defendant Glines is entitled to a new trial, on the ground that through misfortune his defence was not presented at the trial. Upon a new trial the plaintiffs must show, in order to recover, authority from Glines to Noyes to give the note in suit, or knowledge on the part of Glines that it was given, or that it was necessary in the course of their business, or usual in similar partnerships for one partner to give promissory notes in the name of the firm. A new trial will be granted at the trial term, if the terms to be there settled are complied with.

It is no defence for Noyes that the plaintiffs took the note as collateral security. *Tucker* v. *Bank*, 58 N. H. 83 ; *Paige* v. *Chapman*, 58 N. H. 333.

*Case discharged.*

STANLEY, J., did not sit: the others concurred.