## ALLEY *v.* BOWEN-MERRILL COMPANY.

### Opinion delivered June 10, 1905.

1. LAW PARTNERSHIP—AUTHORITY OF MEMBER.—The act of one member in a firm of lawyers within the scope of the partnership business is the act of all. (Page 8.)

2. SAME—AUTHORITY TO BUY LAW BOOKS.—A member of a partnership for the practice of law is authorized to purchase, in the name of the firm, such law books as are reasonably necessary in the firm's business. (Page 9.)

3. FOREIGN CORPORATION—DOING BUSINESS IN STATE.—The institution and prosecution of an action by a foreign corporation is not doing business, within the meaning of the act of February 16, 1899, and other statutes upon the subject. (Page 10.)

Appeal from Polk Circuit Court.

JOEL D. CONWAY, Judge.

Affirmed.

### STATEMENT BY THE COURT.

This is a suit begun in a justice's court on the 2d day of August, 1902, by Bowen-Merrill Company, a corporation under the laws of Ohio, against Glitsch & Alley, a law firm.

Omitting the caption, the complaint filled in justice's court by said corporation sets forth the following allegations:

"That the said Bowen-Merrill Company is a corporation organized under the laws of the State of Ohio, and doing business in Indianapolis, in the State of Indiana, with a branch house at Kansas City, Mo. That the said defendants, by their said contract in writing, under their said firm name of Glitsch & Alley, promised to pay to the said plaintiff on the 25th day of June, 1898, the sum of $25 for law books, with interest from maturity at the rate of 10 per cent. per annum; that the said defendants, by their written contract, promised to pay to the said plaintiff on the 27th day of October, 1898, the sum of $12 for law books, with 10 per cent. interest from maturity—copies of which said contracts are filed herewith, as exhibits A and B, respectively, and asked to be made and taken as a part of this complaint; and the said plaintiff also files herein a statement, duly verified, of the amount due and owing by the said defendants to the said plaintiff; and the said plaintiff says that the said defendants, nor either of them, have paid the said sums of money, nor the interest thereon, and that same is due, etc., and pray for judgment."

At the trial in the justice's court, in answer to the above allegations of plaintiff, J. I. Alley, a member of the former law firm, filed his separate answer, which, aside from caption and prayer, reads as follows:

"Admits that he was at some time a partner of H. Glitsch in the practice of law, but denies that he, as a member of the firm of Glitsch & Alley, made or signed the contract sued upon; denies that it was done with his knowledge or consent by Glitsch or any one else; denies that it was a part of the partnership business, or that, if Glitsch signed said contract with the firm name, as alleged, he had any right or authority to do so, and [alleges] that same is not binding upon defendant J. I. Alley."

Defendant denies that the contract was made as alleged by plaintiff.

Defendant, further answering, says: "That the plaintiff corporation herein is a foreign corporation, and that, as such corporation, it has never complied with the laws of Arkansas, and especially with the act of the Legislature approved February 16, 1899, in the filing of a copy of its articles of incorporation with the Secretary of State, and for said reason cannot do business or maintain this suit in this State."

Further answering, defendant says: "The claim and contract sued on herein is barred by the statute of limitations; the same, if made as alleged, was made more than three years ago." Prayer for judgment.

The case was tried upon the issues as made by the complaint and answer in the justice's court, where judgment was in favor of defendant Alley, and the case was appealed to the Polk Circuit Court, where it was tried upon the same issues by the court sitting as a jury, and upon the following agreed statement of facts:

"I. It is agreed that during 1898 Henry Glitsch and J. I. Alley were partners in the practice of law in Mena, Arkansas, under the style of Glitsch & Alley, and that the partnership agreement was a verbal one.

"II. It is further agreed that Henry Glitsch signed the firm name of Glitsch & Alley to a contract for law books of the Bowen-Merill Book Company, and that the order, contract and agreement was made by Henry Glitsch in the firm name and committed to writing.

"III.  It is agreed that J. I. Alley never gave his consent to nor authorized Henry Glitsch to make this order for books, nor any other order, nor to sign the firm name to the order, nor any other order nor contract, other than the use of his and the firm name in pleadings in court.

"IV.  It is agreed that this suit was begun in the justice's court of S. H. Smith on August 9, 1902.

"V.  It is agreed that the following is a correct statement of the account:

1898.

| | |
|---|---|
| July 15, Shearman & Redfield on Neg................$12 00 |
| July 18, Sackett's Instructions to Juries..............  6 00 |
| July 18, Underhill's Criminal Evidence...............  6 00 |
| October 27, Beach on Contracts.....................  12 00 |

"VI.  It is agreed that the plaintiff, the Bowen-Merrill Company, is a foreign corporation, and that it has not complied with the laws of the State of Arkansas by filing a certificate of articles, etc. (Act of February 16, 1899), with the Secretary of the State of Arkansas.

"VII.  It is further agreed that the defendant, J. I. Alley, never acknowledged this indebtedness, or any liability whatever.

"VIII.  It is agreed that J. I. Alley has been a continuous resident of the State of Arkansas since the making of this contract.

"IX.  That the defendant, Henry Glitsch, in two letters written by him, one to the plaintiff and one to the plaintiff's attorney, admitted that said books were bought for the use of said firm, and that he, as one of the partners, signed the firm name to the contract for the purchase thereof.

"X.  It is agreed that the contract for the purchase of said books was made outside of this State."

This trial resulted in a verdict in favor of plaintiff, and defendant Alley appeals to this court.

*Wright Prickett* and *J. I. Alley,* for defendant.

A member of a non-trading firm has no implied authority to bind the firm by negotiable paper, and the burden is upon the one who seeks to hold the firm liable. 22 Am. & Eng. Enc. Law, 147; 4 *Id.* 178; 78 Mo. 128; 37 Wis. 285; 50 Miss. 344; 13 Bush, 67; 44 Ill. 525; 45 Kan. 8. A foreign corporation cannot maintain its suit without filing its articles here. Kirby's Dig., § 830; 70 Ark. 535.

*R. G. Shaver,* for appellee.

The institution and prosecution of an action by a foreign corporation is not doing business within the meaning of the statute. 70 Ark. 535; 55 Ark. 174; 57 Ark. 424; 55 Ark. 172. Appellant's partner had authority to bind the appellant by signing the firm's name to the note. Bates, Part. § § 327-329, 343; 13 Ark. 174; 15 Ga. 197; 31 Ark. 411; 29 Ark. 511. Notice of, and acquiescence in, or taking advantage of, an unauthorized act amounts to ratification. 67 Ark. 236; 1 Bates, Part. § § 266, 315, 322; 58 Ark. 84, 460; 32 Ark. 251; 54 Ark. 216; 55 Ark. 116.

WOOD, J., (after stating the facts.) Two questions are presented:

First, is J. I. Alley, the appellant, liable on the contract made by Glitsch, his law partner, without his knowledge or consent?

Second, can the Bowen-Merrill Company bring this suit and maintain it in this State, it being an Ohio corporation, without filing here its articles of incorporation and appointing an agent?

1. Upon the first question the trial court declared the law as follows over defendant's objection, which was declaration No. 4:

"In a partnership for the practice of law the act of one partner in the scope of business of said firm is the act of all, and every responsibility incident to other partnerships in general attaches to legal partnerships, as well as corresponding rights."

Upon this point the defendant asked the following declarations, which were refused:

"(1). That a firm of lawyers is a non-trading partnership, and one member of the firm cannot bind the other without express authority from the other."

"(2). It is necessary in this case for the plaintiff to prove that Henry Glitsch had the right to contract for books in the firm name."

"(3). It is the duty of persons or firms doing business with a non-trading partnership to know if one member is authorized to bind the other on contracts and commercial paper."

"(5). That a firm of lawyers is a non-trading partnership, and that one partner cannot bind the other, either on commercial paper or on contracts, although the proceeds were used in the business, without express authority from the other partner."

The court correctly declared the law that the act of one partner in a firm of lawyers in the scope of its business is the act of all.

It is generally held that non-trading firms have no power to borrow money and sign negotiable paper, and that one member of such firm has no power to bind the other members by signing the firm name to such paper. *Worster* v. *Forbush,* 171 Mass. 423; *Smith* v. *Sloan,* 37 Wis. 285; 22 Am. & Eng. Enc. Law, p. 154, note (Lawyers). This is because such transactions are not generally within the legitimate scope of the business of such firms. There is no reason why such firms should not be bound by the acts of their members within the scope of their business. This would be true even in the case of negotiable paper, where it was shown that such paper was executed within the scope of the firm's business. 1 Bates, Part. § 343. Mr. Bates, after an exhaustive review of the authorities on the powers and liabilities of non-trading partnerships, says: "Each partnership must stand largely on the nature of its peculiar business, and no rule of universal application is possible." This is the correct doctrine, and there is no reason why a firm of lawyers should not be bound by the act of one of its members in buying such law books as may be reasonably necessary for carrying on the business. Such an act is certainly within the scope of the business of such a

partnership. It is impossible to practice law successfully in these times without some law books. As Mr. Bates says: "It is difficult to conceive of a partnership which does not require some purchases to be made in the usual course of its business." In non-trading firms this is certainly necessary. He instances the case of lawyers purchasing their law books. *Miller* v. *Hines,* 15 Ga. 197. See also *Crosthwait* v. *Ross,* 1 Humph. 23. The purchase of law books reasonably necessary in the business is a responsibilty and liability incident to a partnership for the practice of law. And when lawyers come together for that business, they are presumed to repose in one another the trust and confidence necessary to attend to the duty of purchasing law books for the firm, and to clothe each with authority to bind the other.

2. "The institution and prosecution of an action is not doing business within the meaning of the act February 16, 1899, and other statutes upon the subject." *Buffalo Zinc & Copper Co.* v. *Crump,* 70 Ark. 525; *Railway Company* v. *Fire Association,* 55 Ark. 174.

Affirm.