Judge Marshaux.
delivered the Opinion of the Court.
In the year 1832, James D. Breckinridge and James W. Denny, being partners in the practice of law in the city of Louisville, collected a sum of money for the firm of Kellogg and Baldwin, of New York; who being immediately apprised of the fact, drew a bill upon them for the net amount. In the latter part of December, 1832, the bill having come to the Branch of the United States» Bank at Louisville, for collection or payment, Denny ap. plied to a ‘shaver’s broker’ for the loan of three hundred and fifty dollars for eight or ten days; stating that a bill drawn upon Breckinridge and Denny, for money collected by them, had unexpectedly come to the Bank; and offering, as collateral security for the return of the money applied for, “some leases for ground rent, assigned in blank.” The sum desired was procured by the broker, from Shrieve, and delivered to Denny, who without executing any written evidence of the debt, received it, and took up the bill of Baldwin and Kellogg for three hundred and eighty dollars, seventy cents.
The declaration, pleas &c.
Assiimpsit lies, in this state, on h written acceptance. Ante, 853.
Partners, in general, have authority to hind their firms in all contracts in the tegular Course of their husinesssuch as those deal ing with them, would ^consider as made in behalf of the firm, and for its benefit.— But—
*376 Oii the 7th of January, 1833, when this loan becarrié due, Denny being unable to return the money, drew a bill in his own favor, upon Breckinridge and Denny, for three hundred and fifty dollars, payable on tho 19th of February following; and having endorsed it as payee, and accepted it in the name of Breckinridge and Denny, de* livered it to thé broker, in discharge of the loan, and took up the leases which he had previously deposited as collateral security* On each of these trafisáctioñs, the broker who negotiated them, and Shrieve, who supplied the money, charged heavy premiums.
Before the last named bill fell due; Denny died; arid the bill being unpaid at maturity, Shrieve afterwards brought this action of assumpsit against Breckinridge. In the first count, suing ás the indorsee of Denny, he declares against Breckinridge as surviving acceptor* The sebond count is for so much money paid, laid out and expended, for the use of Breckinridge and Denny* The defendant demurred, and pleaded non-assumpsit; and fi verdict and judgment having passed, against him, and his motion for a new trial having been overruled, he has brought the case before this Court by appeal.
Several questions arise on this record; of which the first is, whether the acceptance of a bill of exchange, made in the usual form by writing the word “accepted’* across the bill, and signing the name of the acceptor under it, is not under the act of 1812, placing certain unsealed instruments on the footing of writings under seal, a specialty or covenant. If it is, the action of assumpsit could not be maintained in the present case, and this is one of the grounds urged for a reversal of the judgment.
This Court having determined in the case of Anderson v. Anderson, just decided, that the action of assumpsit may be maintained on an acceptance substantially the same as the present; this objection to the judgment cannot be sustained.
Other objections taken to the declaration need not be noticed, and we proceed to the questions made upon the trial, which will sufficiently appear from the following instructions given and refused:—
.The right of one Íiartner to hind lis. co-par'tners, is not unlimited, but more or less extensive, as the business and operations to which the partnership extends,are more or less extensive.
The Court, on motion of the plaintiff, instructed the jury, in substance, “that if the money furnished to Denny, was advanced for the purpose of paying the debt of Breckinridge and Denny, or upon the credit of that-firm, 'óf with the privity of Breckinridge, and if it was in fact applied to the payment of a debt of the firm‘d Breckinridge was liable for the amount with interest.” And the following instruction asked for by the defendant, was refused, viz: “That one of two partners-as attorneys and practitioners of law, has no right to pledge th¿ name of the other; and consequently, Denny could not, without the assent of Breckinridge, bind him for the repayment of the money borrowed'by Denny, nor render him liable by the acceptance of the bill drawn by Denny on the firm df Denny and Breckinridge.”
The instructions given seem properly to refer to the circumstances of the original loan, as furnishing thé test of Breckinridge’s liability; but they do not,in our opinion, lay down the proper criterion by which to determine it.
No man can be made a party to a contract by the act of another, unless the act be done under an authority, express or implied, or be subsequently approved or acquiesced in, under such circumstances as amount tó á ratification, or afford a presumption of previous authority or assent. Nor even in the case of an authority, express or implied, is the principal bound by the act of his agent, unless it be done for him and in his name, or unless it be necessarily apparent that it was intended and understood to be so done, and cannot otherwise have its pro* per effect.
These principles apply to the acts of partners, as well as others. But in the case of partners, there is an implied power founded on the fact of partnership itself, and on a regard for the convenience of the partners, the exigencies of their business, and the safety of those who have dealings’with them; by wdiich implied power, each partner is understood to be authorized to act for, and to bind the firm in all contracts coming within its line of’business, and which a bona fide dealer may have the right to consider as made on behalf of the firm, and for *378 its benefit. As the considerations on which this implication rests, evidently apply with greater force, or in a greater degree, to various partnerships, according to the nature and objects of the several associations and the sphere of their respective operations, the extent of the power implied from the mere existence of the partnership, must also vary according to the same standard-» One of a firm of lawyers may have the same power to bind his co-partners by any act within the legitimate limits of the partnership operations, which the member of a general mercantile company has of binding his co-> partners. But as the objects and operations of the latter firm are much more extensive and various than those of the former, so to promote the convenience and success of the firm, to answer the exigences of its business* and to secure the safety of the public having transactions with its separate members, the implied power of the several partners, in the former case, must embrace a much greater variety of objects and acts than there is any r-easonable ground for in the last. And the law will Hot imply a power in one man to bind another further than there exists a reasonable ground, and indeed a legal-necessity, for the implication.
Borrowing money is no part of the regular business of an atto. nndoounsellor at law: from the existence of a partnership in that profession, there fore, no authority results to any member of the firm, to obtain loans o'n the cred it of the firm; and,though one may undertake to pledge the firm for a loan obtained by him—unless authority is given by the express terms of the partnership contract, ór may be implied from the general habits of the partners —no other mem | her will be bound by such contract, without his express consent. Two lawyers— general partners in practice, collect money fora client, and one ofthem spends it; the client draws on them for the money, and he who spent it, bor rows ^upon col¡ lateral security,) for a few days, a sum sufficient to enable him to meet the draft; then draws a bill on his firm,which he also accept3, in the partnership name: held» that the other partner isj not bound by the acceptance.
*378 The question then is, whether in the case of attorneys and counsellors at law practising in partnership as such,, this implied power, resulting from the mere fact of their being partners in the practice of their profession, authorizes one of them to borrow money in the name and on the credit of the firm, or justifies the lender who deals separately with one of them, in looking to the name and credit of all, for his security. And this question seems to depend upon the enquiry* whether the borrowing of money comes- within the scope and object of the association, and -is one of its legitimate operations. Money does not constitute the business capital of an attorney and counsellor as such; nor is it the instrument with. wrhich he carries on his profession. It forms no significant item in the contributions of individuals forming a-professional partnership of this character. A principal object of every such association is, doubtless, to acquire money or property, which is owned jointly until, divid *379 ed. Bui if the association be purely professional, the proceeds of the joint labor and skill are acquired and held, not for joint use, but for division and separate use. There is in the legitimate operations of such a partnership, no joint use of money. And if a contingency might be imagined, in which there would be an occasion for the joint use of money, and a necessity for raising it by the joint means or responsibility the-law does not provide for such a contingency by implying a general authority in one partner to contract a joint loan of money, as in mercaptile partnerships, but leaves- the emergency to such provision as the partners themselves may make for it, or as the immediate circumstances may indicate.
In short, the borrowing of money is no part of the professional business of an attorney and counsellor, or of a firm associated for the pursuit of that business. It is not to be considered as coming within the scope of their ordinary transactions, unless made so by the terms of the association, or shown to be so by the practice or usage of the parties. Thei'e is, therefore, no pp.wer implied from the mere existence of an association in the practice’ of law, by which one partner is authorized to borrow money in the name of the firm, and to. bind the firm thereby; nor is there any ground in the same general fact, which would authorize the lender, dealing separately with one partner, to look to the name and credit of the others. When one member of such a firm separately borrows money, though for the avowmd purpose of replacing a, sum collected for a client, and for which the firm is liable, the transaction prima facie is his own, and imposes no responsibility upon the other partners to the lender, except so far as they directly or indirectly, participate in it. The necessary inference from such an application to borrow, is that the client’s money has been improperly used by the firm, or some of its members. And the inference is scarcely less strong that it had been so used by the individual who is attempting, without any co-operation of his partners, to replace it by borrowing. And that, although the firm be liable to the client, the individual partner negotiating the loan is the real debtor, and is providing the means of paying"” his *380 own debt. This inference, and several extraneous circumstances which strengthen it in this particular case, but which need not be detailed, were open to the lender, anc^ certainly should have induced him if he expected to look to Breckinridge for payment, to require some evidence of his concurrence in the act. No such evidence sems to have been required or produced. And ■we are authorized by the testimony, to assume, not only that the lender (or his agent) had no right to look to Breckinridge as a party to the loan, but that he did not in fact look to. him as such.
Even in mercantile business— tdiere the author ity of partners is most extensive,if a contract made in the name of the firm, is made by one, for his own separate use and that fact is known to the other contracting party, the other members of the firm, are not bound by the con
*380 The loan appears to have been contracted by and in the name of Denny alone, and, although he would not have been trusted personally for the amount, the loan was made upon collateral security presented by him, which for all that appears was amply sufficient. Had the lo.an been applied for by Breckinridge, or had he been understood to be responsible for it, no other security would .probably have been thought of. And certainly the mere fact, that the money thus borrowed by Denny, was applied to the payment of a debt of the firm, for which he must be. understood to have been liable, and that it was borrowed for the purpose of being so applied, could not make his partner liable upon a contract to which he was no party, either in form or in fact. Nor could Breckinridge’s knowledge that Denny had borrowed or was borrowing money in his own name for such a purpose, or his assent to i&wkey;-of which, however, there is no proof—make him a party to the contract, or render him liable for its breach. It is equally clear, as already intimated, that, if Breckinridge was not liable upon the original contract of loan, and the debt thereby created, was the debt of Denny alone, the substitution, without the knowledge or assent of Breckinridge, of the bill of exchange, with an acceptance signed b.y the name of Breckinridge and Denny, and executed, as the lender knew, wholly by Denny, in the absence of his partner, did not, and could not, make the firm liable. The circumstances of the original loan and liability were all known to the lender, or his agent. And it is well set- . ° tied, even with regard-to mercantile partners, whose *381 power of binding their, respective firms by negotiable securities is very extensive, that one partner cannot, by the execution of such a security in the name of the firm, and without its knowledge or assent, make it liable for his own debt, if the other party to the transaction know? or have good reason to know, that it is his separate debt.
In these views, we have, as we think, sufficiently met the several points growing out of the instructions which have been stated; and as the opinions of the Circuit Court, in granting the instructions asked for by the plaintiff, and in refusing that which was moved on the part of the^ defendant, are obviously inconsistent with the principles which we have asserted, and must therefore be deemed to be errdneous—the judgment is, for this error, reversed, and the cause remanded for a new trial to be had on principles not inconsistent with this opii> ion. " ‘ ' " 1