JUDGE GOFER
delivered the opinion op the court.
February 12, 1873, J. D. Morris, E. C. Machen, R. E. Cross, N. B. Peck, and Philip Judge entered into a written agreement, wherein it was recited that Morris & Machen had, by leases from the owners thereof, secured the right to enter upon divers tracts of land situated in Lyon County, for the purpose of prospecting for and mining iron ore and other minerals, and that there was much other land in the same county which could be leased upon similar terms. The writing then proceeds:
“Said Morris & Machen, R. E. Cross, N. B. Peck, and Philip Judge have and do hereby form a co-partnership, under the firm-name of Morris, Machen & Co., for the purpose of engaging in said mining business upon said lands, or upon any other lands which they may procure for that purpose. Said business to include the getting out of iron ore or other mineral substances and coal from any lands aforesaid, or which said firm may secure, and the right to develop same and sell the ore and coal, etc., or to sell the rights, privileges, or leases aforesaid, or any lands the title to which said firm may secwre.
“ Said Morris & Machen agree to put all of their rights, title, claim, or privileges which they have in, of, or to any of said lands into said firm of Morris, Machen & Co., and to secure to said firm all the right, title, and interest or claim they have in or to the same, or which they may acquire, by proper deed or deeds of conveyance duly executed, acknowledged, and delivered to said firm. Each of said partners agrees to share equally in all the profits or losses of said enterprise. Said partnership to continue during the will of the partners; and said Cross, Peck, and Judge agree to put into said firm a sum of money, as so much capital advanced by them *72 to said firm, for the purpose of building side-tracks from said E. & P. Railroad to the said mining lands, and so much as may be necessary, not exceeding $3,000. Said Morris and Machen have actually expended $680 in said enterprise to secure their rights aforesaid, and they shall each be entitled to a credit of $340, as so much capital advanced to said firm; said sum so expended by them having been spent for the benefit of said enterprise, and said enterprise is to embrace the purchase of the title to any coal or mining lands in fee, and the leasing of same, as said firm may determine; but no debt shall be contracted by said firm, or by any member thereof, on account of said firm without the consent of said partners; and if said Morris & Machen, or any one of said partners, or either of them, shall lease or purchase any mining or coal lands on or near said railroad, he or they shall convey the same to said firm at cost price, if said firm so elect.”
March 29, 1873, E. C. Machen purchased, in the name of Morris, Machen & Co., a' tract of two hundred acres of land of the appellees, H. L. Machen and N. T. Braswell, at the price of $6,000, and a tract of two hundred acres of N. T. Braswell at the price of $2,000, and accepted deeds therefor, which on the 31st of March were lodged in the clerk’s office of the Lyon County Court for record.
April 23d E. C. Machen drew, in the name of Morris, Machen & Co., upon Philip Judge, in favor of Machen & Bras-well, for $6,000, and in favor of Braswell for $2,000, in payment for the land. Judge refused to accept or pay the bills, and thesé suits were brought thereon against Morris,' Machen & Co. Cross, Peck, and Judge denied the right of E. C. Machen to purchase lands for the firm; averred that they had not been consulted, and had not consented to either of the purchases; that such purchases were frauds upon them, and had been made pursuant to a fraudulent conspiracy between E. C. Machen and H. L. Machen and Braswell; pleaded non est *73 factum to the bills, and renounced any and all claim to the lands. They also set up the article of partnership, and alleged that at the time of making the sales both H. L. Machen and Braswell knew that E. C. Machen had no authority to make the purchases.
By consent of the parties the suits were transferred to equity and consolidated, and on final hearing judgments were rendered for the plaintiffs, and from those judgments Cross, Peck, and Judge prosecute this appeal.,
There was no issue in either case that was properly cognizable in equity, and we must treat the finding of the circuit court on the facts as if the same facts had been found by a jury. The evidence was, when viewed most favorably to appellants, conflicting on the question of fraud, and also upon the question whether Braswell had notice of the limitation in the articles of partnership upon the power of the members of the firm to contract debts without the consent of all the members. There was no evidence conducing to prove that H. L. Machen had any such notice.
We therefore assume that there was no fraud, and that neither of the appellees had any notice of the restriction in the articles of partnership upon the power of the individual partners to create debts against the firm, and proceed to decide the case upon the single question ivhether, in view of the terms of the partnership, and the law applicable thereto, the appellants are liable for the price of the land. And here we ought to remark that the facts are so stated in the petitions, that the right of the appellees to recover does not depend alone upon the authority of E. C. Machen to draw bills in the name of the firm, but upon the question whether Machen had power to purchase the land and bind the partnership for the price; and we ought also to remark, that there was no evidence conducing to prove that the appellants ever ratified the purchases or either of them.
*74 The partnership articles provide that the partnership is formed “for the purpose of engaging in said mining business upon said lands (i. e. the lands already leased by Morris & Machen) or upon any other lands which they (Morris, Machen & Co.) may procure for that purpose. Said business to include the getting out of iron ore or other mineral substances and coal from the lands aforesaid, or which said firm may secure, and the right to develop the same and sell the ore and coal, etc., or to sell the rights, privileges, or leases aforesaid, or any land the title to which said firm may secure.” And again, “And said enterprise is to embrace the purchase of the title to any coal or mining lands in fee, and the leasing of the same, as said firm may determine.”
It seems to us that this language is clear and explicit, and that the purchase and sale of lands were within the scope of the partnership. But the articles are equally explicit that no member of the firm and no number of them less than the whole had authority to buy lands for the firm.
It is contended, however, that the purchase of lands being within the scope of the partnership, each member had implied authority to make purchases for the firm, and that whatever may have been the rights and duties of the partners inter esse, and the express limitation upon their power contained in the written agreement between them, third persons dealing with a single partner, without notice of the private agreement between them, can not be affected by it.
This is undoubtedly true as to commercial partnerships; but it is a rule of the law merchant which has been adopted into the common law, and rests for its support upon the custom of merchants alone, and has no application to non-commercial partnerships.
Mr. Collyer says, “ The law of partnership, as administered in England, rests on a foundation composed of three materials — the common law, the law of merchants, and the Roman *75 law,” and lie traces the power of one partner to bind his co-partners by a bill of exchange to the law merchant. Again he says, “The general principle which governs all partnerships in trade is this, that each individual partner constitutes the others his agents for the purpose of entering into all contracts for him within the scope of the partnership concern, and consequently, that he is liable to the performance of all such contracts in the same manner as if entered into personally by himself. (Collyer on Partnership, 103.)
But the power of one partner thus to bind his co-partners rests alone upon the usage of merchants, and does not amount to a rule of law in any other than commercial partnerships. (Story on Partnership, sec. 126.)
In non-commercial partnerships one who seeks to hold the firm bound upon a contract made by a single member must be able to show either express authority, or that such is the custom and usage of that particular branch of business in which the firm is engaged, or such facts as will warrant the conclusion that the partner had been invested by his co-partners with the requisite authority, the distinction being that in commercial partnerships the extent of a partner’s power to bind the firm is a question of law, while the power of a partner in a non-commercial firm to bind his co-partners is a question of fact.
Thus the business of a commercial partnership being ascertained, and the nature of the contract made by a single member, and the circumstances attending it being known, the court may generally determine, as matter of law, whether the contract was within the scope of the implied powers of a partner. Not so, however, in reference to a contract made by a member of a non-commercial partnership.
A partner in such a partnership does not generally possess power to bind the firm, and consequently, the extent of his powers is not fixed by the rules of law, but each case is left to *76 be decided upon its particular facts; and in all such cases, in order to make out the liability of the firm, it ought to be made out affirmatively by the plaintiff that the partner had power to make the contract in question. (Dickinson v. Valpy, 10 B. & C. 128; Levy v. Pyne & Richards, 41 E. C. L. 249; Smith v. Sloan, 37 Wisconsin, 289.)
In the cases at bar the authority of the partner making the contract is not shown. The partnership articles show that no such authority was thereby conferred; no evidence was offered to prove that such authority had been otherwise delegated, or that it was usual in such partnerships for one partner to buy land in the name of the firm, or that the existence of such authority was necessary in order to carry on the business for which the partnership was created, and we have seen that no such power can be implied from the mere existence of the partnership.
We are therefore of the opinion that the court erred in rendering judgment against the appellants, and the judgment, as to them, is reversed, and the cause is remanded with directions to dismiss the petition.