63    11
139a  323

BRONSON C. RUMSEY AND OTHERS, APPELLANTS, v. GEORGE D. BRIGGS AND ANOTHER, RESPONDENTS.

*Partnership — non-trading — scope of the business — when one partner can bind the other — false statements of one partner — ratification must be with knowledge — provision in partnership articles.*

George D. Briggs and Charles D. Marshall formed a partnership, under written articles, by the name of George D. Briggs & Co., to manufacture and sell lumber, bark and ties upon a particular tract of land. The business was carried on under the names of G. D. Briggs & Co and of G. D. Briggs. While Marshall was in Europe Briggs began negotiations to purchase, individually, another tract of land, and induced one Rumsey, who knew the nature of the business of Briggs & Co., to indorse his individual note in order to close up the purchase. Briggs falsely stated to Rumsey that Marshall was interested in the purchase and had authorized it.

Upon Marshall's return from Europe, Briggs offered to him, and he took, a half interest in the purchase, but without knowledge of the fact that the note had been given by Briggs.

In an action brought by the firm of which Rumsey was a member, upon a note made in renewal of the note signed by Briggs and indorsed by Rumsey, it appeared that the note in suit was signed only by Briggs, and was indorsed by A. Rumsey & Co., as accommodation indorsers.

*Held*, that the partnership of Briggs & Co. was a non-trading partnership.

That the purchase of other lands was not within the scope of their business.

That, in order that one partner in such a firm may bind another, express authority to do so must be shown or facts warranting a conclusion that such authority has been given, or that it is justified by the custom and usage of the particular branch of business in which the firm is engaged.

The power of one partner to bind his copartner rests alone upon the usage of merchants, and does not amount to a rule of law in any other than commercial partnerships.

That the false statement of Briggs did not bind his firm.

That the fact that Marshall, upon his return from Europe, took an interest in the lands having no knowledge that Briggs had given the note, was not a ratification of that act.

That, although the partnership articles provided for the manufacture and sale of lumber " upon any other tract of land which shall be purchased by said copartners as hereinafter provided," yet, as no further provision on that subject appeared in the articles, the clause must be held to mean only that, in the event of such a purchase, some agreement in regard to it would be entered into by the partners subsequently.

APPEAL by the plaintiffs, Bronson C. Rumsey, Lawrence D. Rumsey and Bronson Rumsey, from a judgment of the Supreme Court, entered in the office of the clerk of Erie county on the 2d day of March, 1891, dismissing the complaint upon the merits, with costs to defendant Charles D. Marshall, after a trial before a referee.

The appeal was heard upon the judgment, no case having been made.

The action was brought to recover the amount due upon the following note, which had been indorsed by A. Rumsey & Co., the payee, for the maker's accommodation :

" 5,000.00.                   BUFFALO, *Oct.* 22d, 1888.

" One month after date, I promise to pay to the order of A. Rumsey & Co., five thousand dollars, at Manufacturers and Traders' Bank, value received.

                     " (Signed.)       G. D. BRIGGS."

*Ansley Wilcox,* for the appellants.

*George Clinton,* for the defendant Marshall, respondent.

LEWIS, J. :

The defendants, on the 17th day of April, 1882, formed a copartnership under written articles of copartnership. The part thereof material to this case is as follows :

" The said parties agree to become copartners in business under and by the firm name of George D. Briggs & Co., for the purpose of manufacturing and selling lumber, bark, railroad ties, and do all necessary work and business relating thereto upon a certain tract of land in McKean county, in the State of Pennsylvania, recently con-

tracted to be purchased for the benefit of said firm by said George D. Briggs from the Keating Land Company, known as Fair Run Hollow, in Liberty Township; and also upon any other tract of land which shall be purchased by said copartners as hereinafter provided. * * * The said George D. Briggs is to be business manager of said copartnership and * * * give his personal attention to said business in all its details."

Their business was carried on under the firm name of G. D. Briggs & Co., and also under the name of G. D. Briggs. Their business continued down to November, 1888, when Briggs became insolvent, and made an assignment for the benefit of his creditors, and the copartnership was thereupon terminated.

Marshall was a practicing lawyer in Buffalo, and took no active part in the business.

The firm, for the prosecution of its business, became the owner of a saw-mill located near the lot of land.

The funds of the firm were deposited in the name of Briggs, and from time to time, as the demands of the business required it, he made notes which were discounted for the use and benefit of the firm. The bark and timber upon the tract of land upon which the company operated had been substantially removed prior to January, 1888.

Immediately preceding the last-named date the copartners had a consultation relative to the purchase of other timber lands located in the vicinity of their saw-mill for the purpose of taking the timber and bark therefrom and manufacturing and selling the same; and among the tracts of land which they had in view was one consisting of about two thousand acres, known as the "Rock Run Tract;" but no understanding or conclusion was reached on the subject.

Afterwards, and while the defendant Marshall was absent in Europe, Briggs entered into negotiations with one J. W. Bouton, looking to the purchase of the said Rock Run tract for himself. The negotiations resulted in Bouton puchasing the tract, which he afterwards conveyed to Briggs. Briggs did not have express authority or consent of his partner to purchase the land for the firm. Briggs' agreement with Bouton was in his individual name for himself, and not in the name of the copartnership. But he made the purchase believing and expecting that Marshall, on being informed

of the purchase, would consent and agree that the firm should take the title to the land upon the same terms on which Briggs purchased it.

About the month of January, 1888, Briggs applied to Bronson C. Rumsey, one of the plaintiffs, for assistance in connection with his business operations, and stated to him that he came to see him with regard to advances of money, and also in reference to making a large contract for bark with the firm of which Rumsey was a partner. He informed Rumsey that he had a refusal for quite a number of acres of hemlock land in Pennsylvania, which he proposed to buy for himself and Marshall as partners, that he was authorized by Marshall to make the purchase, but that Marshall was in Europe and he could not get word to him in time, and wanted to close up the purchase, and if he made the purchase he would make a large contract with Rumsey for bark; that he wanted some money to pay on the lands and to build tram-ways on the land if he purchased it so as to be ready to get out bark in the spring; that he was buying the lands for Marshall and himself, and he requested the plaintiffs to indorse his note or advance money to enable him to make the purchase. Rumsey was aware of the fact that Marshall was a partner of Briggs in the lumber and bark business. He also knew that for many years prior thereto Briggs had been engaged, individually, on his own account, in buying lands in Pennsylvania, getting off the timber therefrom, manufacturing it into lumber and selling it and marketing the hemlock bark.

During that time Briggs had dealt upon his own account with the plaintiffs. Thereafter, on the 5th day of March, 1888, at the request of Briggs, the plaintiffs indorsed a note of $5,000 made by Briggs in his individual name, and he procured it to be discounted by the Manufacturers and Traders' Bank of Buffalo; it was several times renewed and rediscounted by said bank, and the last time it was renewed and rediscounted on the 22d day of October, 1888, and is the note sued in this action; when it fell due, it was protested for non-payment, the plaintiffs paid and took it up.

On the 7th day of March, 1888, Briggs addressed a letter to Marshall, in Paris, informing him of the purchase of the Rock Run tract, and the price to be paid therefor. Marshall received the letter but made no reply thereto.

Briggs paid to Bouton, on and towards the purchase of the land, the sum of about twenty-two thousand dollars, using the proceeds of the first-mentioned note indorsed by the plaintiffs for that purpose. The title to the land was thereupon conveyed by the owners thereof to Bouton, there remaining unpaid upon the contract between Bouton and Briggs the sum of seven or eight thousand dollars. While the title to the land was in Bouton, and the balance due on the contract remained unpaid as stated, and about the 1st of May, 1888, Marshall returned from Europe and Briggs informed him of the conditions of the contract of purchase, and that the land had not been paid for in full; that the title remained in Bouton, and he then requested Marshall to take a half interest in the property at the price which he had agreed to pay therefor, and proposed that they become the owners of the land as partners and operate the same under their articles of copartnership, and Marshall consented so to do.

For the purpose of carrying into effect the agreement, and procuring the means of paying the balance of the purchase-price, it was arranged between Briggs and Marshall that the sum of $20,000 should be borrowed of one Mrs. Myers, to be secured by a mortgage on the lands; and that Bouton should convey the lands to Briggs, and that he should execute the mortgage to Mrs. Myers.

The land was thereupon conveyed to Briggs, and he executed a mortgage to Mrs. Myers for the $20,000 and conveyed an undivided one-half part thereof to Marshall. Out of the money borrowed of Mrs. Myers seven or eight thousand dollars were used to pay the balance due on the Bouton contract. About nine thousand dollars were used, by the consent of both partners, to pay up and procure the discharge of a mortgage on the Fair Run tract owned by the defendants as copartners; the remainder of the $20,000 was credited to Briggs on the books of the company, and the company thereafter, and until the failure of Briggs, operated the said land as copartners by taking timber therefrom.

Otherwise than as above stated, Marshall never paid or advanced anything individually towards the payment for the land either to Bouton or to Briggs. Of the moneys paid by Briggs on the Rock Run tract the sum of $10,000 was raised by him on a note for that amount, made by him in the name of the firm of G. D. Briggs

& Co., dated March 16, 1888, and indorsed by Briggs personally, and discounted at the Manufacturers and Traders' Bank of Buffalo. This note was several times renewed by the makers; it was renewed and rediscounted the last time on the 8th day of July, 1888; it was then indorsed by Marshall individually.

In making the loan of the credit of his firm, by the indorsements upon the notes, Bronson C. Rumsey relied upon the statements made by Briggs, and upon the joint credit and responsibility of Briggs and Marshall as copartners. The defendant Marshall had no knowledge of the giving of the original note, or of any of the renewals thereof, until some time after the failure of the defendant Briggs in November, 1888. He never consented to the giving of either of the notes. He never authorized Briggs to purchase the lands known as the Rock Run tract, and did not know of such purchase until several weeks after its purchase by Briggs, and after the original note had been indorsed by the plaintiffs. He did not know how or in what way Briggs had paid Bouton for the land. The business of the defendants' firm was simply and only removing the timber from the tract of land owned by them, taking the bark and timber therefrom and marketing the same.

The learned referee found, as conclusions of law, from these facts: That the purchase of the " Rock Run Tract " was not within the actual or apparent scope of the business of the firm; neither was the making of the notes within the actual or apparent scope of the firm's business, and was not the act of the firm.

The plaintiffs knew the limits and nature of defendants' business. When they consented to indorse the note they were informed that the proceeds therefrom were to be used in the purchase of land and in procuring appliances for removing and marketing the timber and bark thereon. They indorsed the note, relying upon the untruthful statement of Briggs that Marshall had agreed and consented to the firm purchasing the land.

To find the firm bound upon a contract thus made by a single member thereof, either express authority must be shown to make the contract, or that such is the custom and usage of the particular branch of business in which the firm was engaged, or such facts as will warrant the conclusion that the single member had been invested by the firm with authority to make the note.

The plaintiffs failed to establish either of these requisites. It cannot be claimed that Briggs had any express authority to make the note, or that the facts tended to establish any such authority.

The business of the firm was confined to removing the bark and timber from a single lot owned by the firm and converting the same into money. Their business was not, in any sense, of a commercial nature. It was what is known as a non-trading or non-commercial firm. Briggs had no authority, without the express consent of Marshall, to purchase other lands for the firm to operate upon.

It was incumbent upon the plaintiffs to show either express authority in Briggs to bind the firm, or such facts as would warrant the conclusion that he had been invested by his copartner with the requisite authority. The power of one partner to bind his copartners rests alone upon the usage of merchants, and does not amount to a rule of law in any other than commercial partnerships. (Story on Partnership, § 126.)

The case of *Judge* v. *Braswell*, reported in 13 Kentucky Reports, page 67, is, in its facts, very similar to the case at bar. The defendants there were engaged as a firm in the business of mining upon lands owned by the firm; they were sued upon a contract made by a part of the members for the purchase of other lands to mine upon.

In the opinion of the court delivered by Judge COFER, it was held that a copartnership engaged in the business of mining upon lands was a non-commercial partnership, and that such a copartnership is not bound by the contract of a single member in purchasing lands for the firm to operate upon. The articles of copartnership in that case provided for operating upon lands then owned by the firm, or upon any other lands which they might procure for that purpose, and the contract sued upon was one for the purchase of such other lands.

The same doctrine is laid down by the Supreme Court of Errors of Connecticut, in the case of *Pease* v. *Cole*, reported in the Albany Law Journal, volume 44, page 413. (See *North Pennsylvania Coal Company's Appeal*, 45 Pa., 181; *Holmes* v. *Burton*, 9 Vt., 252.)

The untruthful statements of Briggs to Rumsey, as to his authority to bind Marshall, were not binding upon the firm. (Lindley on Partnership, 165–169; *Ostrom* v. *Jacobs*, 9 Metc., 454; *Thorn* v. *Smith*, 21 Wend., 365.)

If it cannot be held that Marshall affirmed the act of Briggs in giving the note, by his acts after he returned from Europe, it is quite clear, we think, that he cannot be held liable upon the note. As we have seen, the purchase of the "Rock Run tract" was, in fact, an individual transaction of Briggs, and was not within the actual or apparent scope of the defendants' partnership. Marshall did not by any act of his knowingly ratify the act of Briggs in giving the note.

There cannot be gleaned from the referee's findings any evidence that Marshall, at any time before Briggs' failure, knew that such a note had been given, or that the proceeds of the note had been applied towards the payment of the Rock Run tract. Precisely how the cost of the Rock Run tract was adjusted between the copartners does not appear. It was incumbent upon the plaintiffs, if they sought to hold Marshall liable upon the note, to show that Marshall in some way received benefit from the proceeds of the note.

The ratification of an act previously unauthorized, in order to be binding, must be made with a full knowledge of all the material facts, the acceptance without knowledge of the material facts, of the fruits of the unauthorized act of another does not and cannot amount to a ratification. The transaction between plaintiff and Briggs had nothing to do directly with the contract for the purchase of the land from Bouton, Briggs having no actual or ostensible authority to bind the partnership by such contract; and Marshall not knowing, at the time he consented to take an interest in the land, that Briggs had assumed to bind his firm, his taking an interest in the property cannot be held to be a ratification of the act of Briggs in procuring the indorsement. (*Baldwin* v. *Burrows*, 47 N. Y., 199; *Central City Savings Bank* v. *Walker*, 66 id., 424; *Smith* v. *Kidd*, 68 id., 130; *King* v. *Mackellar*, 109 id., 215.)

Some reliance is placed by the appellants upon the clause in the articles of copartnership reading: "And also upon any other tracts of land which shall hereafter be purchased by said copartners as hereinafter provided." As it does not appear from the findings of the referee that any other provision was incorporated in the articles of copartnership than the one quoted, as to purchasing other lands, it must be held that the clause mentioned contemplated that, if any other land were to be purchased, it should be purchased pursuant

to some agreement thereafter to be made by the copartners. The referee has found that no such agreement was made.

A like provision was incorporated in the articles of copartnership in the case of *Judge* v. *Braswell* (*supra*), and that court held that it did not authorize the purchase of mining land by an individual partner without the consent of the other members of the firm.

The referee, we think, made a correct disposition of the case, and the judgment appealed from, as to the respondent Marshall, should be affirmed, with costs.

Dwight, P. J., and Macomber, J., concurred.

Judgment appealed from, dismissing the complaint as to the defendant Marshall, affirmed, with costs.