CASE 15—ACTION ON CONTRACT—OCT. 12.

# O'Connor v. Sherley, Etc.

APPEAL FROM JEFFERSON CIRCUIT COURT, COMMON PLEAS DIVISION.

1. ATTACHMENTS—AFFIDAVITS FOR, AGAINST FIRM.—An affidavit for an attachment against a firm in this language: "Plaintiff says that the firm of O'Connor & McCulloch has no property in this State subject to execution, or not enough thereof to satisfy the plaintiff's demands sued on herein, and the collection on these demands will be endangered by a delay in obtaining a judgment or a return of no property found," is not sufficient under sub-section 2 of section 194 of the Civil Code; but in the absence of a motion to discharge, in which event the plaintiff might have amended, the objection comes too late after judgment.

2. PARTNERSHIP—POWER OF PARTNER AS TO COMMERCIAL PAPER.—The rule that a partner of a non-commercial partnership has no power to bind his co-partner by the execution of commercial paper has no application in this case where it appears that the original agreement and the course of business pursued by the firm recognized the power.

3. SAME—SUB-PARTNER.—An agreement between a partner and a stranger to share the former's profits and losses does not make such stranger a partner in the original firm, though such agreement were made with the knowledge of the other partner of the original firm.

C. B. SEYMOUR FOR APPELLANT.

1. The attachment should be discharged because sufficient grounds are not stated.

2. The judgment on the notes is erroneous because McCulloch had no right to bind O'Connor by these notes. Breckinridge v. Shrieve, 4 Dana, 375; Judge v. Braswell, 13 Bush, 75; Linn v. Valz, 11 Ky. Law Rep., 846.

3. The relation between appellant and appellees, whether called partnership, sub-partnership, or by any other name, was a relation which made it unjust for Sherley to recover from O'Connor anything more than the excess of his advances above his share of the losses.

SAME COUNSEL IN A PETITION FOR A REHEARING.

O'Connor v. Sherley, &c.

SWAGER SHERLEY for APPELLEE.     (PIRTLE & TRABUE of
    COUNSEL.)

1. The affidavit for the attachment was sufficient, and, if not, ap-
    pellant has waived his right to object. Chiles v. Shaw, 13 Ky.
    Law Rep., 143.
2. McCulloch had the right to bind the firm of O'Connor & Mc-
    Culloch by issuing their notes to Sherley. Contract of partner-
    ship between O'Connor and McCulloch.
3. O'Connor knew of and ratified McCulloch's issuance of the firm's
    paper.
4 Sherley was a sub-partner of McCulloch, but not a member of
    the firm of O'Connor & McCulloch. Am. & Eng. Ency. of Law,
    vol. 17, p. 933; Setzer v. Beale, 19 W. Va., 274; Burnett v. Snyder,
    81 N. Y., 550; 19 Ind., 113; 107 N. Y., 507; Lindley on Partner-
    ship, vol. 1, par. 3, s. p. 55.

JUDGE BURNAM DELIVERED THE OPINION OF THE COURT.

On the 19th of June, 1883, O'Connor and McCulloch en-
tered into a written agreement of partnership, under the
firm name of O'Connor & McCulloch, for the purpose of
completing the building of the masonry of the Henderson
Bridge, pursuant to a contract entered into by them with
the Henderson Bridge Company. In the contract of part-
nership between them it was expressly provided that
O'Connor was to keep $20,000 in the firm, and McCulloch
was to keep $25,000 in the firm, and that, if other money
was needed in the prosecution of the enterprise, it should
be raised in paper made by the firm and indorsed by T.
H. Sherley; the firm to pay the interest or discount, and to
pay the indorser 10 per cent. per annum, or at that rate,
on all firm paper upon which he should become bound.
And on the same day, and with the knowledge of O'Con-
nor, Sherley and McCulloch entered into this written con-
tract:

"This agreement between T. H. Sherley and J. G.
McCulloch witnesseth that said McCulloch and M. J.
O'Connor have formed a partnership for the execution of

a contract with the Henderson Bridge Company for the construction of the foundation and masonry of its bridge at Henderson, Kentucky, and certain additional contracts in reference to said work are to be made from time to time. By that agreement of partnership, M. J. O'Connor is to put $20,000 in said firm, and J. G. McCulloch is to put $25,000 in said firm. O'Connor is to have $300 per month out of the firm money for his services, and T. H. Sherley is to receive ten per cent. on all paper of the firm he indorses, and the profits and losses are to be divided equally between the partners.

Now, said Sherley agrees to furnish McCulloch half of the capital he is to put in, and Sherley and McCulloch are to divide equally all money that either may receive from said firm, whether from profit, for indorsing, or on account of salary; and, in case there is a loss, Sherley is to divide that, also, with McCulloch."

Pursuant to this agreement the firm of O'Connor & McCulloch at once put a large force to work upon the bridge, which was continued until about April, 1884. About that time, owing to differences between the bridge company and the firm of O'Connor & McCulloch, they suspended work on the bridge. The differences resulted in a protracted litigation, which was finally concluded in October, 1894, by the payment of the bridge company to the attorneys of O'Connor & McCulloch the net sum of $120,855.92.

Whilst the work was in progress, Sherley, pursuant to his agreement with McCulloch, indorsed commercial paper issued by the firm, which was discounted in bank, to the extent of $84,000. All of this paper was signed in the firm name of O'Connor & McCulloch by Mc-

Culloch, as the financial manager of the firm, and who seems to have had charge of this part of the business; O'Connor, in the main, confining his attention to the practical work in which the firm was engaged. All of this paper had to be carried in bank during the ten years of litigation with the bridge company, and had to be renewed from time to time, and the interest paid thereon. Sherley advanced for this purpose, about $32,000, and McCulloch executed to him for the money so advanced for the benefit of the firm of O'Connor & McCulloch the obligations of the firm. In some instances the interest was not paid to the banks at all, but the notes renewed with interest included. In the same way McCulloch executed the notes of O'Connor & McCulloch to his wife for money advanced by her for the benefit of the firm, and in one instance, at least, he executed to O'Connor the note of the firm for money advanced by him for this purpose.

When the judgment was finally collected from the bridge company, Sherley demanded that this money should be applied to the payment of the outstanding obligations of the firm due the banks, on which he was indorser, and that the overplus be applied upon the obligations executed to him for money advanced to the firm; and, upon the refusal of O'Connor & McCulloch to do this, Sherley on the 2d day of November, 1894, instituted suits to compel the payment of the notes held by the different banks upon which he was bound, and also instituted suit on the three notes which had been executed to him, and attachments were sued out, garnishing the money in the hands of the attorneys.

After the pleadings were made up and a great deal of testimony had been taken, a judgment was rendered in favor of appellee, Sherley, and we are asked to reverse that judgment for several alleged errors.

First, it is insisted that so much of the judgment as sustains the attachment must be reversed because the ground of the attachment stated in the affidavit is insufficient.

The affidavit is in these words: "Plaintiff says that the firm of O'Connor & McCulloch has no property in this State subject to execution, or not enough thereof to satisfy the plaintiff's demands sued on herein, and the collection of these demands will be endangered by a delay in obtaining a judgment or a return of 'No property found.'"

Subsection 2 of section 194 of the Code of Practice requires, as a ground for attachment, the affidavit to state that "the defendant has no property in this State subject to execution," and we are of the opinion that a motion to discharge on this ground, if it had been promptly made, should have been sustained; but, if the motion to discharge had been made before submission, an amendment could have been filed, curing the defect, under subsection 2 of section 268 of the Code. As no such motion was made by appellant at any time during the progress of the case, the defect in the affidavit was fully cured by the judgment rendered upon the final hearing, sustaining the attachment, and this question can not be raised for the first time upon an appeal to this court.

The second point relied upon by appellant for reversal is, that after the firm ceased to carry on business in the construction of the bridge, McCulloch had no power or authority to renew old or execute new paper in the name of the firm, as this was not a commercial partnership, but was organized for the sole purpose of doing certain specific work; and, to support his contention, we are referred to the cases of Breckinridge v. Shrieve, 4 Dana, 375; Judge v. Braswell, 13 Bush, 75, [26 Am. R., 185], and Linn v. Valz, 11 Ky. Law Rep., 846.

O'Connor v. Sherley, &c.

The principle of law announced in each of these cases, and which is but a re-affirmation of the elementary writers on this question, is that "one member of a non-trading partnership can not bind his co-partner by the execution of a note, unless he has authority from his copartner so to do;" the reason for the rule being that by the execution of a note the character of the indebtedness is changed, and a different obligation imposed upon the firm. But it does not seem to us that this principle of law can have any application to this case. The fact was recognized both by O'Connor and McCulloch, when the partnership was formed, that it would be necessary for them, in the prosecution of the work which they had undertaken, to borrow large sums of money; and, to enable them to do this, it was agreed that the firm should issue commercial paper, which was to be indorsed by Sherley and discounted in banks, and for the use of his name Sherley was to receive compensation. The evidence shows that O'Connor knew that these notes were being executed in the name of the firm by McCulloch, and indorsed by Sherley, because the money was, in the main, expended under his direct supervision, and that they were being regularly renewed, and also that Sherley was advancing money to pay the discounts; and appellant, having agreed to and ratified this action on the part of McCulloch, can not, after he has had the benefit of appellee's credit for more than ten years, be permitted to repudiate the authority so given.

The third ground relied on for reversal is, that by the arrangement which was entered into between Sherley and McCulloch, Sherley became liable for one-fourth of the losses which might be sustained by the firm of O'Connor & McCulloch, and that he could not recover from appellant

money advanced for the purposes of the firm until there had been a settlement of the accounts of the firm, and unless the amount of such advances exceeded one-fourth of the losses.

We can not concur in these conclusions, as Sherley never was in any sense a partner of the firm of O'Connor & McCulloch. He only agreed to divide the profits or share the losses which McCulloch might sustain in the prosecution of the business of that firm. The law is well settled that:

"If several persons are partners, and one of them agrees to share the profits derived by him with a stranger, this agreement does not make the stranger a partner in the original firm. The result of such an agreement is to constitute what is called a 'sub-partnership,' but in no way affects the other members of the principal firm; nor is there any authority for saying that, because the stranger shares the profits of that firm, he can be made liable to persons dealing with it as if he were a partner therein." (See Coll. Part., P. 45.) And in ex parte Barrow, Lord Eldon puts the law on this subject in this way: "I take it," he says, "to have been long since established that a man may become a partner with A., where A. and B. were partners, and yet not be a member of that partnership which existed between A. and B. In the case of Sir Charles Raymond, a banker in the city, a Mr. Fletcher agreed with Sir Charles Raymond that he should be interested so far as to receive a share of his profits of the business, and which share he had a right to draw out from the firm of Raymond & Co. But it was held that he was no partner in that partnership, had no demand against it, had no account in it, and that he must be satisfied with a share of the profits arising and given to Sir Charles Raymond."

The same principle is announced in 17 Am. & Eng. Enc. Law, p. 933, and in many cases there cited, and also in 1 Lindley on Partnership, p. 55. The partnership of O'Connor & McCulloch was not affected in any way by Sherley's arrangement with McCulloch to share his profits or divide his losses, and the rights of O'Connor are not in any wise affected thereby, and he can not require Sherley to postpone the collection of his demands against the firm until there has been an adjustment between McCulloch and himself, any more than he could any other creditor.

Perceiving no error in the judgment appealed from, it is affirmed.