## Outram v. Paintsville National Bank, et al.

(Decided May 27, 1927.)

### Appeal from Magoffin Circuit Court.

1. Mines and Minerals.—Persons associated together in ownership, development, and operation of oil lease constituted mining partnership, though one of members was appointed and designated as trustee to carry on business where he was in fact only the managing partner.

2. Mines and Minerals.—Each member of mining partnership has lien upon partnership property so long as partnership exists for debts due creditors and for moneys advanced by member, which lien may be enforced without previous agreement.

3. Mines and Minerals.—One who takes mortgage on partner's interest in mining partnership takes it subject to partnership lien existing in favor of other members for debts of partnership and moneys advanced, where mortgage is taken without consent of remaining partners.

4. Mines and Minerals.—Claim of trustee of mining partnership under trust agreement filed under Ky. Stats., section 199b-1, against member for assessment, held partnership lien superior to lien of mortgagee of such member's interest, who took mortgage with full knowledge of character of interest, though assessments were levied after mortgage was recorded.

FRED HOWES and H. H. RAMEY for appellant.

WHEELER & WHEELER for appellee.

OPINION OF THE COURT BY JUDGE DIETZMAN—Reversing.

Charles Greenfield and others were interested in an oil lease in Magoffin county known as the W. B. Bailey lease. He and his associates were conducting the development and operation of this lease under the firm name of the Warrick Petroleum Company. As this court held in the case of Outram et al v. Hudson et al., 218 Ky. 15, 290 S. W. 1031, in defining the relationship existing between those associated together in the ownership, development, and operation of this oil lease, such relationship was a mining partnership. It is true these men appointed and designated one of themselves as a trustee to carry on the business, but in truth such person was really only the managing partner. See Hudson v. Outram, 203 Ky. 78, 261 S. W. 847. The appellant was in January,

1922, designated such trustee. The method of financing the development and operation of this lease as is fully set out in Outram v. Hudson supra, was this: The "trustee" would call upon those interested in the lease from time to time for their proportionate amount of the expenses of running the lease. When the oil taken from the lease was sold the pipe line companies paid directly to each one interested in the lease his proportionate amount of the selling price of the oil. When the "trustee" called upon his associates for their share of the expenses such call was styled "an assessment." In May, 1922, Greenfield had paid all of the assessments theretofore levied against him. On the 24th day of that month he mortgaged to the appellee, Paintsville National Bank, his interest in this oil lease to secure the bank in a loan of $11,000. This mortgage was not put to record until the 2nd of June, 1922, just prior to which another assessment was levied against Greenfield, but this assessment has subsequently been paid. In August, 1922, the so-called trust agreement between those interested in the lease was reduced to writing and there was filed of record in the county clerk's office the "affidavit of ownership" of the business of the Warrick Petroleum Company required by section 199b-1 of the Statutes. Thereafter a number of assessments were made against Greenfield, and, he not paying the same, this suit was brought by the "trustee" against him collect said assessments, a lien being claimed on his interest in the lease to secure their payment. The trustee, not knowing of the mortgage which Greenfield had placed on his interest in favor of the appellee, did not make the appellee a party to his suit. In due time judgment was rendered against Greenfield for the assessments he owed, and a lien was adjudged on his interest to secure their payment. The court ordered Greenfield's interest sold to satisfy the judgment. The appellee, learning by chance of this judgment, then filed its intervening petition setting up its mortgage and asking that its mortgage lien be declared superior to any lien asserted by the "trustee." On final hearing the court adjudged the mortgage lien of the appellee superior to the lien asserted by the trustee. Greenfield's interest in the lease not bringing enough at the sale to satisfy both liens, the trustee has appealed.

The cashier of the appellee bank who negotiated this mortgage for his bank with Greenfield testified that he

knew that all Greenfield had in the oil lease was "a working interest." He admitted that he had in an indirect way understood that the financing of the lease was being done by assessments. In answer to question 25 on page 81 of the transcript, he said:

> "Yes; I knew that the property was being developed by assessments but I didn't know that Mr. Outram was allowing Charlie Greenfield to drag along with his assessments in such a manner."

Reading all of the deposition of Mr. Turner, the cashier, we are convinced that he knew when he took this mortgage for his bank how these men were associated together. Such an association is what the law calls "a mining partnership." Now, although a mining partnership differs in some respects from an ordinary partnership, especially so far as the delectus personae is concerned, yet it does not differ from the ordinary partnership so far as the "partnership lien" is concerned. 40 C. J. 1147, 1151; 18 R. C. L. 1201 et seq. As said in 40 C. J. 1151:

> "Each member of the mining partnership has a lien upon the partnership property for the debts due the creditors of the partnership and for moneys advanced by him for its use which he may enforce in equity without any previous agreement among the partners that such lien shall exist."

See, also, 20 R. C. L., 1030.

This lien exists as long as the partnership does. Under this principle one who takes a mortgage on a partner's interest in a firm takes it subject to the partnership lien. As said in 40 C. J. 1152:

> "A partnership lien is superior to the lien of a pledgee where such lien was taken without the consent of the remaining partners."

Since the appellee bank took its mortgage with full knowledge of the character of the interest which was being put in pledge, and as the lien here sought to be enforced by the "trustee" is the partnership lien to which the lien of the mortgage is inferior, it follows that the lower court erred in holding the lien of the appellee superior to that of the appellant. Its judgment is therefore reversed, with instructions to enter a judgment adjudging the lien of the appellant superior to that of appellee.