## Stephens et al. v. Allen et al.

March 2, 1951.

Edward P. Hill, Judge.

770

Joe Hobson for appellants.

Combs & Combs for appellees.

STANLEY, COMMISSIONER—Affirming.

This appeal is from judgments entered in 14 consolidated suits denying the removal of John Allen as agent or trustee for the owners of operating and producing gas wells.

The plaintiffs, D. C. Stephens and his wife, Mrs. Dora Stephens, own fractional minority interests in the several leases. There were 69 individual defendants, some owning interests in one or more of the properties. The defendant, Allen had acted as agent or trustee for all the projects. None of the defendants participated in the litigation except to join in Allen's answers. The grounds upon which Allen's removal is sought are that he had been negligent in conducting the operations so as to cause loss or reduced production and had failed to keep proper accounts and records. There is no claim for damages or demand for an accounting or recovery of money.

It appears that Allen and others had secured a number of oil and gas leases and promoted their development by disposing of fractional interests in order to obtain necessary capital. If not from the beginning, Allen later became the managing and operating partner, he having substantial interest in all of the operations involved in these cases. In some of them Allen had no interest part of the time and in them and perhaps others another person acted as the agent for a relatively brief period. As such managing agent of his associates, Allen looked after the maintenance and production in a general way, received the proceeds of the sale of gas under contracts with Warfield Natural Gas Company (succeeded by the United Fuel Gas Co.), paid the expenses, and distributed the net amounts to the several partners in the ratio of their fractional ownership.

It is charged that Allen had been designated by "a few of the former owners" to act in this capacity, but the plaintiffs had not consented thereto. We think the proof shows that Allen was chosen or at least has acted at all times by and with the consent if not the actual formal designation by a majority of the owners. Moreover, during the period in which these plaintiffs have been members of the groups, they acquiesced in and ratified his agency for the past period. For the future, the fact that he is accepted or appointed by a majority of the interests binds the plaintiffs. Therefore, the point

and contention of the absence of authority is not well taken. Hudson v. Outram, 203 Ky. 78, 261 S. W. 847.

It is well to understand that a mining partnership is an association of joint owners of mineral property in which, by express stipulation or by implication deduced from the acts of the parties, they unite and agree to develop the premises or operate the lease in order to extract the minerals. It is a partnership of a special type, partaking of the nature of a tenancy in common and a partnership proper. It is, therefore, different in many respects from an ordinary or trade partnership because of the need of an association not subject to the same rules. Though governed by many rules relating to ordinary commercial partnerships, at the same time there are some rules peculiar to itself. Among the different characteristics are (1) there is no delectus personae or right of choice of a partner; (2) the death of a partner or the conveyance of the interest of a member in the lease or business does not dissolve the partnership; and (3) no partner without special or necessary authority has the power to bind the partnership such as in a commercial or trade partnership. Thornton Oil and Gas, Secs. 658, 664, 672; Outram v. Paintsville National Bank, 220 Ky. 253, 294 S. W. 1067; Outram v. Hudson, 218 Ky. 15, 290 S. W. 1031; 36 Am. Jur., Mines and Mining, Secs. 157, 158, 166; 58 C. J. S., Mines and Minerals, Secs. 245, 246. The distinction was recognized in general by this court 75 years ago in Judge v. Braswell, 13 Bush 67, 76 Ky. 67, 26 Am. Rep. 185. One of the essential elements is joint operation, and an association merely for the purchase and sale of mineral lands is not such but is an ordinary partnership or venture, so the death of one member dissolves the relationship where operations have not previously been begun. Diederich v. Dempsey, 298 Ky. 323, 182 S.W.2d 393; 36 Am.Jur., Mines and Mining, Sec. 157; 58 C. J. S., Mines and Minerals, sec. 245. Since the property can be used and operated only as an entirety, it is indispensable that those persons who own the major portions or majority interests have the power to control the conduct of the business in the absence of agreement by all. Outram v. Paintsville National Bank, supra, 220 Ky. 253, 294 S. W. 1067; 36 Am. Jur., Mines and Mining, sec. 159, 162.

It seems to have been held by some courts that

equity should not decree an accounting between the members of a mining partnership without appointing a receiver and dissolving the association, but the weight of authority seems to be, as it should according to our view, that a court upon a showing of mismanagement or failure to act, may afford appropriate relief. The relationship between a managing partner and his associates is fiducial and there is a consequent duty of acting in good faith and with honesty and diligence. Such obligation demands that the managing agent render a true account of his transactions, and a court should require it. Stephens v. Stephens, 298 Ky. 638, 183 S.W.2d 822; Thornton Oil and Gas, Secs. 680, 687; 36 Am.Jur., Mines and Mining, Secs. 163, 167.

The principal evidence introduced by the plaintiffs was by H. T. Dorton, a mining engineer. It is, in short, that some of the gas wells showed evidences of water or, in a few instances, oil, which reduced production in a very substantial amount. He was of opinion that this could have been remedied by certain technical and mechanical appliances. It appears there was a meeting of some of the groups of partners at which Allen was present and Dorton reported the conditions and made certain recommendations with respect to the installment of siphons or drips or the taking of other steps to correct the conditions. These omissions and others, such as the failure to have the wells ''blown'' to increase production, constitute what appellants say was negligent management.

On the other side, the evidence of the defendants is that all these wells were properly equipped and maintained with standard and sufficient drains, where needed, etc. and were operated in accordance with the general custom and recognized manner or in some instances better; also, that they were operated in accordance with the terms of the sales contracts to the purchaser of the gas production. It is certain that depletion and variation in production are normal and unavoidable. The reasons, therefore, are often speculative.

The case was developed extensively. The record exhausted both the subject matter and doubtless the court in trying the case. He found upon conflicting evidence that Allen, the managing partner, had acted in good faith and with diligence in performing his duties

774

and that he had operated the properties in the way deemed by those familiar with such management and work to be proper. In fact, his decision seems to be supported by the preponderant weight of the evidence.

The agent followed the very simple course of depositing the receipts in a special account, drew checks for taxes and the expenses of maintenance, and distributed the proceeds. He kept no records or books and made no statements to the several participating owners. Indeed, it seems that he had destroyed the statements which the purchaser of the gas had sent him from time to time with the remittances. However any owner at any time had access to these bank records and the appellants on several occasions made such examinations. As stated, there is no charge of a failure to properly account for the receipts. The method was very loose and we can understand was unsatisfactory to the appellants and perhaps to other interested parties. But it is shown to be the custom and practice of such agents in this gas field. It does not appear that prior to these suits any demand was made upon Allen for statements of the transactions. We cannot say under the circumstances the court abused a discretion in declining to remove the trustee on this account.

We cannot refrain from observing that this record of eight volumes contains much unnecessary copying, duplication and padding. However, the schedule of the appellants, who must bear the costs, called for coping the entire record. To the extent that the clerk did so, they cannot complain. But there was certainly no need for copying in full each of the 72 different summons. Civ. Code Prac. Sec. 737 (1, 8, 11); Rule 1.210, Court of Appeals.

In making up the records in the many consolidated cases, the clerk repeated the style for each order. In many instances he styled all 14 cases for one order. Some of these orders consisted of only three or four lines, but the clerk used a full page to present them. Though the compensation of the clerk is based upon the number of words (1 cent for each 10 words when this record was made but now 2 cents, KRS 64.010) yet the charges were probably by the page. As to these features, unnecessary copying and padding, we take no action in the absence of a motion for a retaxation of

the costs. KRS 28.120; Bowens v. Amburgery, 289 Ky. 763, 160 S.W.2d 169.

However, the clerk has not endorsed on the record the amount of the fee for making it as required by Rule 1.250. For this dereliction, $10.00 will be deducted from the clerk's fee. Kentucky Cardinal Coal Corp. v. Bennett, 218 Ky. 679, 291 S.W. 1060.

The several judgments are affirmed.